[Crim. No. 4437. Third Dist. Jan. 8, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. BRUCE GRINNELL et al., Defendants and Appellants.

---

*Assigned by the Chairman of the Judicial Council.

McPherson, Mulkey & Aisthorpe and Robert W. Aisthorpe for Defendants and Appellants.

Thomas C. Lynch, Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

REGAN, J.—Defendants were found guilty by a jury of two counts of perjury (Pen. Code, § 118). They appeal from the judgments of conviction.

Defendants are husband and wife. Bruce Grinnell is an attorney at law specializing in estate work, and Pandora Grinnell is his office secretary and bookkeeper. Bruce instituted a will contest action at the behest of one Effie Farish, sister of decedent, in the matter of the Estate of Lela Richie in Butte County. He was successful, and, subsequently, upon the request of Mrs. Farish, a resident of Mississippi, letters of administration with the will annexed were duly issued to Pandora. The Central Valley National Bank had been the duly acting special administrator of the estate during the will contest action.

On June 11, 1964, the Central Valley National Bank filed its first and final account. This showed total property on hand of $35,318.70. This account was settled on June 22, 1964. The special administrator was then paid its fee. Bruce was paid part of his fee.

On July 1, 1964, Pandora, as administrator with the will annexed, received from the Central Valley National Bank the balance of the estate, which consisted of $25,111.95 in cash, a residence worth $7,500 and furnishings in the house worth $250. She deposited the cash in a checking account at the Bank of America, Oroville Branch. This was the only bank account for the estate.

On July 23, 1964, Pandora filed a petition for preliminary distribution, the document on which count I is based. The petition stated that on May 28, 1964, the estate consisted of real estate appraised at $7,500, personal property appraised at $250 and cash in excess of $25,000. The petition requested "preliminary distribution to EFFIE FARISH, in the sum of $23,000." This petition was signed and verified under penalty of perjury by Pandora. It was signed by Bruce as attorney for

the administratrix and prepared with his knowledge and under his direction.

As of the date petition was filed, nine checks, totaling $9,089.69, had been drafted by Pandora and presented to and paid by the bank. Edgar G. Underwood, the operations officer of the Oroville Branch of the Bank of America, testified that the balance of the account on that date was $16,022.28.

Two of these nine checks, totaling $5,500, were in favor of her husband. These payments, and subsequent payments to Bruce, purportedly were made to cover part of the fees due him and other persons for their services in the will contest. According to defendants, these disbursements were made pursuant to oral instructions of Mrs. Farish.

Subsequently, four more checks, totaling $8,500, were drawn in favor of Bruce. One of these checks had been drawn on July 22, 1964, but had not cleared the bank on July 23, 1964.

On August 17, 1964, Pandora filed her "FIRST ACCOUNT AND REPORT OF ADMINISTRATRIX." This document was also verified by her signature under penalty of perjury. It was signed by Bruce as her attorney and was prepared with his knowledge and under his direction. It forms the basis for count II.

The account stated that Pandora was chargeable as follows:

"Amount of Estate pursuant to First and
 Final Account $32,750.00
"No Receipts $32,750.00
"Disbursements:
 Butte County Treasurer, Inheritance Tax
 $1,988.47 $30,761.53
"Property on hand $30,761.53"

Her accounting was incorrect. Underwood testified that the balance as of August 17, 1964, was $8,522.28. Thus, the property on hand could not exceed this amount plus the estimated value of the real property ($7,500) and personal property ($250), a total of $16,272.28.

Orders in accordance with these documents were duly issued.

On March 9, 1966, an indictment issued charging the Grinnells with violations of Penal Code section 118,[1] perjury, in

---

[1]Penal Code, section 118 defines perjury: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, and

four counts. Defendants demurred to each count. They also moved to set aside the indictment under Penal Code section 995. The demurrers were overruled. The motion under Penal Code section 995 was granted as to both defendants on counts III and IV. Defendants pleaded not guilty to counts I and II.

Motions for the court to advise verdicts of acquittal were made at the close of both the prosecution's case and the defense case. All motions were denied.

On January 10, 1967, the jury found both defendants guilty as charged. Defendants moved for a new trial. On February 3, 1967, they moved for an order in arrest of judgment. All motions were denied. Judgments were then pronounced.

 Defendants first contend the court erred in overruling their demurrers and in denying their motions in arrest of judgment. They sought relief by these procedures on the grounds that the indictment lacked substantial conformity with Penal Code sections 950, 951 and 952, and that the facts in the indictment do not constitute a public offense.[2] The

---

every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which such testimony, declarations, depositions, or certification is permitted by law under penalty of perjury and wilfully states as true any material matter which he knows to be false, is guilty of perjury.''

[2]The indictment charging defendants reads as follows:

''The said BRUCE GRINNELL and PANDORA GRINNELL are accused by the Grand Jury of the County of Butte by this indictment, found this ___ day of March, 1966, of the crime of PERJURY (Section 118 of the Penal Code of the State of California) committed as follows: The said BRUCE GRINNELL and PANDORA GRINNELL did on or about the 23rd day of July, 1964, at Butte County and State of California, and before the finding of this indictment, wrongfully, unlawfully declare, depose and certify under penalty of perjury in a case in which such declaration, deposition, and certification is permitted by law under penalty of perjury, willfully state as true a material matter they knew to be false, to wit: That they did file with the Superior Court of the State of California in and for the County of Butte in the Butte County Clerk's Office In the Matter of the Estate of Lela Eubanks Richie, Superior Court #15582, a Petition for Preliminary Distribution, signed and verified under penalty of perjury, wherein it states in effect that there is $23,000.00 in cash which could be distributed in accordance with decedent's will as of the time of the signing of said Petition when they knew that in truth and in fact that there was not $23,000.00 in cash that could be distributed at said time.

''COUNT II

''For a further and separate cause of action, being a different offense of the same class of crimes and offenses as the charge set forth in Count I, and connected in its commission with Count I hereof.

''The said BRUCE GRINNELL and PANDORA GRINNELL are accused by the Grand Jury of the County of Butte by this indictment, found this 9th day of March, 1966, of the crime of PERJURY (Section 118 of the Penal Code of the State of California) committed as follows:

indictment, when making reference to the language of the verified petition for preliminary distribution on which count I is based, reads "wherein it states *in effect* that there is $23,000.00 in cash which could be distributed in accordance with decedent's will as of the time of the signing of said Petition." (Italics added.) The indictment also uses the term "in effect" in count II. They allege the use of the phrase "in effect" renders the accusation fatally defective. We do not agree.

█ Penal Code sections 950, 951 and 952 require only that, in addition to the title information, there be a statement of the public offense charged in a form substantially similar to that set forth in section 951. In charging the offense the indictment is sufficient if it contains a statement in ordinary and concise language that the accused has committed a public offense; it may be in the words of the enactment describing the offense, or declaring the matter to be a public offense, *or in any words sufficient to give the accused notice of the offense of which he is accused.*

██ The defendants had sufficient notice of the offenses of which they were charged. Both counts first set forth words which state defendants' acts, generally, within the language of the enactment describing the offense of perjury. Count I then specifies that defendants swore to the truth of a "Petition for Preliminary Distribution," that the effective meaning of part of the language of this petition was that there was $23,000 in cash which could be distributed at that time, and that there were no such funds then available. Count II specifies that defendants swore to the truth of a "First Account and Report of Administratrix," that the effective meaning of this document was that there had been just one

---

"The said BRUCE GRINNELL and PANDORA GRINNELL did on or about the 17th day of August, 1964, at Butte County and State of California, and before the finding of this indictment, wrongfully, unlawfully declare, depose and certify under penalty of perjury in a case in which such declaration, depostion [*sic*], and certification is permitted by law under penalty of perjury, wilfully state as true a material matter they knew to be false, to wit: That they did file with the Superior Court of the State of California in and for the County of Butte in the Butte County Clerk's Office In the Matter of the Estate of Lela Eubanks Richie, Superior Court #15582, a First Account and Report of Administratrix signed and verified under penalty of perjury, wherein it states in effect that the sole disbursement was to the Butte County Treasurer for Inheritance Tax and that there was on hand property of a value of $30,761.53 as of the time of signing of said Account when they knew that in truth and in fact that there was not $30,761.53 of property left on hand and that there had been other disbursements."

disbursement from the estate and there was $30,761.53 then left in the estate, and that there had been many disbursements and there was far less property in the estate than $30,761.53. We hold that the defendants were adequately apprised of the offenses charged against them. The indictment fully meets the requirements of the law of this state. Therefore, the trial court was correct in overruling defendants' demurrers and in denying the motions in arrest.

█ Bruce contends that the indictment as to him should have been set aside on all counts. He claims that if he is to be convicted at all it must necessarily be as an aider and abettor since he did not verify either document and since no conspiracy was charged. (See Pen. Code, § 31.) He suggests that section 127 of the Penal Code precludes conviction of perjury as an aider and abettor.

Penal Code section 127 provides: ''Every person who willfully procures another person to commit perjury is guilty of subornation of perjury, and is punishable in the same manner as he would be if personally guilty of the perjury so procured.''

We hold that, notwithstanding section 127 of the Penal Code, Bruce could be found to be a principal of the crime of perjury under section 31 of the Penal Code. This latter section provides that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, are principals in any crime so committed. (See 1 Witkin, Cal. Crimes (1963) § 43, p. 45 et seq.) There was no error in the denial by the trial court of Bruce's motion to set aside the indictment.

█ Defendants' contention that the evidence does not support the verdict is without merit. The thrust of their argument is that the proof is lacking to establish that a false statement was in fact made.

A person is guilty of perjury where, contrary to oath, he ''states as true any material matter which he knows to be false. . . .'' (Pen. Code, § 118.) Defendants were charged in count I with filing a petition for preliminary distribution signed under penalty of perjury, which stated ''in effect that there is $23,000 in cash which could be distributed in accordance with decedent's will as of the time of the signing of said Petition when they knew that in truth and in fact that there was not $23,000.00 in cash that could be distributed at said time.''

The petition was introduced into evidence. It alleges, among

other things: the condition of the estate when received by defendant Pandora; that there has been proper notice to creditors; that inheritance taxes have been paid; and that Effie Farish is the sole surviving heir of decedent, as well as being the sole devisee and legatee of her will. The petition then "seeks an order . . . authorizing a preliminary distribution to EFFIE FARISH, in the sum of $23,000.00."

In order to convict a person of perjury, the falsity of the statement must be proven either by the direct testimony of two witnesses or by the direct testimony of one witness coupled with evidence of corroborating circumstances. (Pen. Code, § 1103a; *People* v. *Di Giacomo,* 193 Cal.App.2d 688, 693 [14 Cal.Rptr. 574].) Direct evidence, here, means evidence of facts wholly inconsistent with those set forth in defendants' alleged perjurious statement. (*People* v. *Di Giacomo, supra,* at p. 693; see, also, Evid. Code, § 410.)

In the instant case there was the required direct evidence plus corroborating circumstances which proved the falsity of the statements in the two documents. Regarding count I, the petition for preliminary distribution in effect stated that there was $23,000 in cash that was capable of being distributed at that time. The falsity of that statement was proven by direct evidence. The crucial factor in the falsity of the statement was the size of the bank account. At the time of the filing of the petition the bank account had a balance of $16,022.28. This was proven by (a) the testimony of Underwood; (b) by the introduction into evidence of the ledger sheets of the account; (c) by the introduction into evidence of the cancelled checks written on the account; and (d) by the testimony of a court reporter as to admissions made by Bruce and Pandora Grinnell in another proceeding. Consequently, there was ample direct and corroborative circumstantial evidence to show that there was *not* $23,000 in the estate available for distribution at the time the petition was filed. In fact, there was more than ample evidence that there was only $16,022.28 in the bank account; and even *that* was subject to the $3,500 check that Pandora had drawn in favor of her husband on July 22, 1964.

As to count II, the First Account and Report of Administratrix stated that she had made disbursements of $1,988.47 to the Butte County Treasurer for inheritance tax. It also stated that she had property on hand of $30,761.53. This account and report was filed August 17, 1964. There was direct and corroborating circumstantial evidence proving that

those statements were false. The evidence showed that considerably more than $1,988.47 had been disbursed and that there was much less than $30,761.53 worth of property on hand on that date. This evidence was composed of the following: (a) Testimony of Underwood that on August 17, 1964, the balance of the estate bank account was only $8,522.28; (b) introduction into evidence of the bank's ledger sheets indicating the same figure; (c) introduction into evidence of cancelled checks, written by Pandora Grinnell as administratrix, totaling some $16,589.67, which were all dated prior to August 17, 1964; and (d) by testimony of a court reporter as to admissions made by the defendants while testifying in another proceeding.

Plaintiff submits that the above evidence completely satisfied the requirements of Penal Code section 1103a.

Well known principles of law govern an examination into the sufficiency of the evidence of the other elements of perjury. ■■ Appellate courts will not attempt to determine the weight of the evidence but will only look to see if there is substantial evidence to support the conclusion of the trier of fact. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Daugherty,* 40 Cal.2d 876, 884 [256 P.2d 911]; *People* v. *Newland,* 15 Cal.2d 678, 680-683 [104 P.2d 778].) ■■■ Here there was evidence that the documents in question were intentionally filed; the documents themselves show that they were verified under penalty of perjury and that the false statements were material; and the evidence analyzed above clearly indicates the falsity of the statements and defendants' knowledge of the falsity.

Defendants also contend that because the language in the petition for preliminary distribution was somewhat vague, a perjury conviction cannot result. Here, the words used are consistent throughout the document in conveying an impression which is false. It is unreasonable to assert that the document when verified under penalty of perjury is not perjurious. In the petition for preliminary distribution the phrase appears ''petitioner seeks an order of this Court authorizing a preliminary distribution to EFFIE FARISH in the sum of $23,000.'' The whole gist and meaning of this phrase is that there is $23,000 available for distribution and it has not yet been distributed. Then the phrase is used, ''the foregoing property *may be distributed* in accordance with decedent's

Will *at this time. . . ."* (Italics added.) This indicates that it is a future distribution that is contemplated. And finally there is the phrase:

"*That distribution is requested at this time* to the following persons of the following described property:

"To Effie Farish, in the sum of $23,000.00." (Italics added.) In the context in which they are found, these words convey the meaning that it is a future distribution of presently held cash that is requested and intended.

Similarly, in the First Account and Report of Administratrix, there is the heading "Disbursements," which is followed by the lone item, "Butte County Treasurer, Inheritance Tax $1,988.47." This entry was designed to and does indicate that only one disbursement had been made—the one listed. Furthermore, the entry "Property on hand—$30,761.53" means that the administratrix has property worth $30,761.53 on hand.

Defendants speak of the question of their intent. Bruce Grinnell was a specialist in "handling" estates, and his wife, Pandora, was also an experienced legal secretary in estate matters. These documents were intended to and did deceive the court into thinking all was as it should be with the estate, when in fact assets had been dissipated without the knowledge, approval or order of the court.

■■■ Defendants finally contend that they should have a new trial because one of the jurors was guilty of misconduct. It is claimed that juror Ina Modene Sharp concealed a dislike for both defendants and that this concealed bias prevented defendants from having a fair and impartial trial.

■■■ Whether or not a new trial shall be granted rests with the sound discretion of the trial court. (*People* v. *Starkey,* 234 Cal.App.2d 822, 831 [44 Cal.Rptr. 738].) The trial court's determination cannot be disturbed unless there has been an abuse of discretion. (*People* v. *Maldonado,* 220 Cal. App.2d 923, 925 [34 Cal.Rptr. 311].) ■■■ In the instant case there is no showing of an abuse of discretion. Several affidavits were offered to refute the alleged bias. The challenged juror denied the charges in her own affidavit. The key affiant, upon whose statement defendants relied, later presented a counteraffidavit which stated that her original one was untrue and that she was deceived into signing it. Implicit

in the order of denial is a finding by the trial court that juror Sharp did not make the statements. (*Boone* v. *Spring Hollow Farms,* 167 Cal.App.2d 174, 179 [334 P.2d 78].)

The judgments are affirmed.

Pierce, P. J., and Friedman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 28, 1968.