[Crim. No. 19302. First Dist., Div. Four. Mar. 26, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE EDWARD BURTON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and James J. Nielsen, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, John T. Murphy and Ina Levin Gyemant, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CALDECOTT, P. J.**—George Edward Burton appeals from a judgment of conviction, following a jury trial, of violation of Penal Code section 245, subdivision (a).

On July 5, 1977, appellant and the victim were employed as warehousemen on the receiving dock at Montgomery Ward. A disagreement arose between them and the victim was severely beaten by appellant with a lead pipe.

I

Appellant's first contention on appeal is that the prosecutor displayed prejudicial misconduct (a) by making reference to his prearrest silence with respect to his self-defense claimed at trial and (b) by indicating during the cross-examination of appellant and in his argument to the jury that appellant failed to surrender the pipe, the weapon used in the commission of the crime, to the police. As appears from the ensuing discussion, none of appellant's arguments have any merit.

The first incident referred to by appellant took place during the examination of Officer Kinsella. The prosecutor asked the officer whether appellant had come forward to give any explanation about his involvement in the incident. Although trial counsel's objections to the line of questioning were sustained by the court, appellant maintains, citing *Doyle* v. *Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240], that prejudicial misconduct occurred because the questions, in essence, alluded to the fact that after the attack appellant did not claim that he

acted in self-defense and that by a reference to appellant's prearrest silence, the prosecutor illegally tried to impeach his trial testimony purporting to establish self-defense.

In *Doyle* v. *Ohio, supra*, 426 U.S. 610, 619 [49 L.Ed.2d 91, 98], the Supreme Court held that the use for impeachment purposes of the defendant's silence, at the time of arrest and after receiving *Miranda* warnings, violated the due process clause of the Fourteenth Amendment. The court stressed the unfairness of the state informing a defendant that he had the right to remain silent (the *Miranda* warning) and then using the silence against him.

Significantly, however, the cases cited above involve comments or questionings on the defendant's *postarrest* silence. Here, we are confronted with an entirely different situation, that is whether a defendant's *prearrest* silence may be utilized for impeachment purposes without violating his constitutional rights to due process and to remain silent.

Although there had been conflicting holdings as to whether the defendant's prearrest silence is protected by the Fifth and Fourteenth Amendments, this issue has been put to rest by *Jenkins* v. *Anderson* (1980) 447 U.S. 231 [65 L.Ed.2d 86, 100 S.Ct. 2124], a case in point recently decided by the United States Supreme Court. In *Jenkins*, the petitioner stabbed and killed one Doyle Redding on August 13, 1974. He was not apprehended until he turned himself in about two weeks later. At his trial for first degree murder, the petitioner contended that the killing was in self-defense. During the cross-examination, the prosecutor questioned the petitioner as to whether he had told the police what had happened. He said he had not. The prosecutor also referred to petitioner's prearrest silence in his closing argument.

In rejecting petitioner's claim that his constitutional rights were violated, the Supreme Court pointed out that petitioner's failure to speak occurred before he was taken into custody and given the *Miranda* warnings. Since no governmental action induced the petitioner to remain silent before arrest, continued the court, the fundamental unfairness present in *Doyle* and its progeny was not present in the case. In accordance therewith, the Supreme Court held that the use of prearrest silence to impeach a defendant's credibility violates neither the Fifth Amendment nor the due process clause of the Fourteenth Amendment. (*Jenkins* v. *Anderson, supra*, 447 U.S. at pp. 238-240 [65 L.Ed.2d at

pp. 95-96].) Needless to say this rule is equally applicable to the case at bench which, similar to *Jenkins*, involves references to appellant's prearrest silence.

The second incident of the alleged prosecutorial misconduct occurred at appellant's cross-examination during which the following dialogue took place between him and the prosecutor:

"Q. Now, Mr. Burton, did you ever make any attempt to turn this pipe that you've indicated you picked up over to any police agency—

"MR. BROOME: Objection.

[BY MR.·HORNER:] "Q. For examination and—

"MR. BROOME: Objection—

[BY MR. HORNER:] "Q. I'll just leave it at that, Mr. Burton, examination?

"MR. BROOME: As counsel knows, that's not a burden upon this man.

"THE COURT: Objection sustained.

"MR. HORNER: I'm not talking about any burden. I'm talking about whether he did turn this item over.

"THE COURT: I understand, Counsel, and the objection is sustained.

[BY MR. HORNER:] "Q. You've indicated, Mr. Burton, that you turned this pipe, Defendant's E, over to your attorney about six days after the day of the incident, is that right?

"A. Right.

"Q. Did you ever attempt to turn this over to the San Leandro Police Department?

"MR. BROOME: Same objection.

"THE COURT: Overruled.

"THE WITNESS: No, I didn't.

[BY MR. HORNER:] "Q. Did you ever make any attempt to turn this item of evidence to the Alameda County Sheriff's Department?

"MR. BROOME: Objection. Your Honor, I think this whole line of questioning is obviously—

"THE COURT: The last question, objection sustained.

"MR. HORNER: All right.

"THE COURT: Any further references to law enforcement and that pipe.

"MR. HORNER: No further references to law enforcement?

"THE COURT: And that pipe.

"MR. HORNER: All right."

■ Appellant claims that the cross-examination, together with the closing argument in which the prosecutor referred again to the pipe constituted misconduct which prejudiced his case. Appellant's contention must be rejected for three cogent reasons.

First, as the record reveals, the issue that the pipe, the suspected instrumentality of the crime, was handed over by the appellant to Mr. Taub, his attorney, rather than to the police, was brought up on appellant's direct examination. Since it is clear that the issue of handling the pipe was injected into the case by trial counsel at appellant's direct examination, the prosecutor was well within his right to further pursue the matter during cross-examination. (*People* v. *Matthews* (1980) 108 Cal.App.3d 793, 795 [167 Cal.Rptr. 8].)

Second, any eventual misunderstanding on the part of the jury that the appellant had a duty to hand over the pipe was obviated inasmuch as the trial court several times admonished the jury that the appellant had "no duty or obligation to come forward and make any explanation to law enforcement authorities; none," and that the jury should disregard any inference or implication that such duty was imposed upon the appellant.

Third, even if assumed arguendo that the conduct of the prosecutor was improper, it is plain from the record as a whole that the misconduct was harmless because the misconduct did not affect the fairness of the trial and because in view of appellant's admission that he hit the victim and a witness' testimony that he saw appellant swing the pipe, it is not reasonably probable that a result more favorable to appellant would have been reached but for the alleged misconduct. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 214-215 [152 Cal.Rptr. 141, 589 P.2d 396]; *People* v. *Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913].)

## II

As set out in detail earlier, appellant was convicted of assault with a deadly weapon and by means of force likely to produce great bodily injury (§ 245, subd. (a)). The evidence presented at the trial showed that the assault occurred as a result of an on-the-job dispute with a coworker. At the probation and sentencing hearing conducted on January 23, 1979, the trial court granted probation and imposed, inter alia, the following two conditions: "You are not to indulge in the use of intoxicants or visit any place where intoxicants are sold as the primary income of the business. . . . You are to submit to search and seizure by any probation officer or any other law enforcement officer at any time of the day or night with or without a search warrant."

Appellant contends that the imposition of these conditions was unwarranted under the applicable law and the facts of the instant case. We agree.

The pertinent statute, Penal Code section 1203.1, provides in part that: "The court may impose and require any or all of the above-mentioned terms of imprisonment, fine and conditions and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer . . . ."

While the cases interpreting the statute uniformly hold that the trial court has broad discretion in setting the terms and conditions of probation (*People* v. *Richards* (1976) 17 Cal.3d 614, 619 [131 Cal.Rptr. 537, 552 P.2d 97]; *People* v. *Keller* (1978) 76 Cal.App.3d 827, 831 [143

Cal.Rptr. 184]; *People v. Alexander* (1960) 182 Cal.App.2d 281, 293 [6 Cal.Rptr. 153]), it is well recognized that such discretion is not boundless. Thus, it has been said that in order to be valid, the condition of probation must promote the salutary aims of section 1203.1, that is the reformation and rehabilitation of the probationer. This can be achieved only if the condition of probation reasonably relates to the proven offense and is aimed at deterring similar violations in the future. (*People v. Keller, supra*, 76 Cal.App.3d 827, 831.) Consistently therewith, it has been held that "A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid." (*People v. Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290]; accord, *People v. Richards, supra*, 17 Cal.3d 614; *People v. Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545].) When measured against this three-pronged test, both conditions in dispute fail to satisfy the requisite criteria.

As far as the intoxicant condition is concerned, the record is completely devoid of any evidence that appellant had consumed alcoholic beverage prior to, during, or after the assault for which he was convicted. The record similarly lacks any proof that the assault was even remotely connected with a commercial establishment where alcoholic beverages were sold.

In addition to being unrelated to the offense itself, the condition fails to satisfy the second prong of the test as well. It is obvious that both consuming and purchasing alcoholic beverages are legitimate activities for adult persons and that the entering of places where alcoholic beverages are sold is an entirely lawful conduct.

Finally, the record fails to establish the requisite factual nexus between the crime, appellant's manifested propensities and the probation condition. (*In re Martinez* (1978) 86 Cal.App.3d 577, 583 [150 Cal.Rptr. 366]; *People v. Lent, supra*.) In this respect, it is especially significant that there is no evidence in the record that appellant had ever been convicted of an alcohol-related offense and/or that he had manifested a propensity to become assaultive while drinking.

■ The warrantless search condition is likewise lacking in the necessary legal and factual support. Before a defendant may be compelled to

give up his fundamental constitutional right to be free from a warrantless search and seizure, the circumstances concerning his background and the nature of the crime for which he was convicted must be carefully scrutinized. (*People* v. *Keller, supra*, 76 Cal.App.3d 827.) While in the case at bench the record reveals that appellant tried to conceal the pipe, the deadly weapon, after the commission of the crime, there is no showing whatsoever that the weapon was smuggled in by the appellant or that it was concealed by him prior to the perpetration of the assault. Furthermore, nothing in appellant's past history or the circumstances of the present offense indicate a propensity on appellant's part that he would resort to the use of concealed weapons in the future. Under these circumstances it cannot be said that the condition of a warrantless search reasonably relates to the prevention of appellant's future criminality. (Cf. *In re Martinez, supra*, 86 Cal.App.3d 577 at p. 583.)

The judgment is modified by striking therefrom the following conditions of probation:

Not indulge in the use of intoxicants or visit any place where intoxicants are sold as the primary income of the business.

Submit to search and seizure by any probation officer or any other law enforcement officer at any time of the day or night, with or without a search warrant.

As so modified the judgment is affirmed.

Christian, J., and Poché, J., concurred.