[No. F001828. Fifth Dist. June 20, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES ELLIS FONDRON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Charles M. Bonneau, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gregory W. Baugher, Nancy Sweet and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, Acting P. J.—Appellant Charles Ellis Fondron appeals from his conviction at trial by jury of possession for sale of a controlled substance, phencyclidine (PCP), in violation of Health and Safety Code section 11378.5.

### STATEMENT OF FACTS

At approximately 8:50 a.m. on April 7, 1982, Kern County Deputy Sheriff Hackney was dispatched to the 1100 block of East Planz Road in Bakersfield, the location of the Silver Dollar Bar and Grill. When he arrived, Hackney saw appellant Charles Fondron standing out in front of the building in the unlittered, dirt parking lot. Appellant "matched the description that a citizen had called in regarding a complaint." Hackney saw no one other than appellant in the area. He stopped his patrol unit and started to walk toward appellant. When Hackney yelled at him, appellant turned toward him. Appellant made no attempt to run. Hackney conducted a "pat-down" search because he recognized appellant "as the person I knew to be Charles Fondron."

"[A]lmost simultaneously" to Hackney's arrival on the scene, Sergeant Joe Orman, also a Kern County deputy sheriff, arrived, proceeding from

the opposite direction as Hackney. Orman observed Hackney exit his patrol unit, call out something to appellant, and proceed to walk over and pat down appellant. Orman observed no one in the area other than Hackney and appellant. Orman, who was only 33 feet away, had seen appellant drop a vial from his left hand when Hackney first spoke to appellant from his patrol unit.

As Hackney was patting down appellant's left leg, he saw a small vial about two inches long containing a brown liquid, lying on the ground a few inches from appellant's left foot. Hackney picked up the vial. He noticed it had a strong odor of ether.

Appellant was then searched. Hackney found $135 on appellant's person. The officers learned that appellant was the occupant of 1111 East Planz Road. He explained he was there to open the establishment for the business day.

The vial was examined by Don DeFraga, a criminalist for the Kern County Sheriff's crime lab. He determined it contained a usable amount of phencyclidine, commonly known as PCP, dissolved in ether. An equivalent of one drop of the liquid would be found on a typical hand-rolled PCP cigarette. There are approximately 20 drops to a milliliter. There were eight milliliters of the liquid in the vial. One drop of that PCP liquid was a usable amount.

Bakersfield Police Sergeant Eric Matlock, an expert on PCP for sale, was of the opinion that based on the quantity of liquid PCP involved in this case, it was being held for purposes of resale.

*The Defense*

Appellant testified that on April 7, 1982, he was the proprietor of the Silver Dollar Bar and Grill; he arrived that day a little after 8 a.m. to open up. He kept the parking lot in front of all the buildings clean and free of debris and litter. When he arrived at his business that morning there were about eight people outside and he spoke to all of them. The road in front of his business is straight and a person can see in three different directions for about a mile. He recalled that when the sheriff's deputies arrived he was alone in the area because the others had all run away. He had observed that the people in front of his business usually run when law enforcement arrives. On this occasion, one of the people in front of his business whom he refused to identify as other than "Killer," threw the vial of PCP on the ground as he ran off. Appellant picked it up. He had no intent to sell it or its contents, or to use the contents; all he intended to do was get rid of it.

Appellant testified that he dropped it on the ground because when the officers pulled in to the lot, one of the officers told him to "hold it," and informed him he was under arrest. Therefore, to avoid trouble, he tried to get rid of it.

Appellant testified that the money he had on him when arrested, approximately $150, was cash register money necessary to conduct business for the day.

Appellant admitted he had been convicted in 1975 of a felony, second degree burglary.

On cross-examination, appellant said he knew the names of the people he claimed had been outside his business but refused to give their names because they were presumably all involved in the drug transactions that take place in that area. Appellant claimed that he saw "Killer" throw the PCP vial down to the ground as he ran off but could not describe the throwing motion.

*Rebuttal*

Deputy Hackney testified that as he drove down Planz Road, he could see the front of the Silver Dollar Bar from four-tenths of a mile away. He saw only one person standing in the front parking lot. He did not see anyone leaving the area.

When he parked in the parking lot and exited his patrol unit the first words he said to appellant were, "Hey, Partner." He never said, "hey, you're under arrest" out in the parking lot when he first pulled up. He did not say those words until they were inside the building. He had no cause to arrest appellant when he first arrived.

Hackney agreed that in his experience of patrolling the area for eight years, the immediate vicinity of 1111 East Planz usually had several pedestrians standing in front of the businesses. He also said that when police cars came by it was not the general reaction for the people to run away.

DISCUSSION

I. POSTARREST SILENCE.

During cross-examination, the prosecutor asked appellant, "Now, did you tell Deputy Hackney the story that you told the jury, did you tell him that that morning?" Appellant replied, "I didn't say nothin' to him." There was

no objection or motion to strike this question or appellant's answer. During the prosecutor's argument to the jury, the prosecutor asserted that it would have been "natural" for appellant to tell the police his side of the story, and that his failure to do so at the time of arrest indicated that his trial testimony was not truthful. At this juncture, defense counsel objected on the basis that the prosecutor's comment was forbidden due to defendant's right to remain silent. The prosecutor replied that he was merely commenting on the state of the evidence. The trial court agreed and overruled the objection. The prosecutor then repeated his line of reasoning for the jury.

It is the contention of appellant that the prosecutor was improperly permitted to argue, over defense objection, that appellant's postarrest silence was a circumstance indicating his guilt. According to appellant, this argument violated appellant's right to due process of law, as set forth in *Doyle* v. *Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240].

*A. Waiver.*

It is the respondent's position that any objection was waived by defense counsel's failure to object or move to strike when the question was asked of appellant during cross-examination.

The initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and admonition would have cured the harm. (*People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].) If it would, the complaint must be rejected; if it would not, the court must address the issue whether, on the whole record, the harm resulted in a miscarriage of justice within the meaning of the Constitution. (*Ibid.*) While a prosecutor may comment on the state of the evidence (*People* v. *Jackson* (1980) 28 Cal.3d 264, 304 [168 Cal.Rptr. 603, 618 P.2d 149]), he may not argue the evidence for an improper purpose. (*People* v. *Purvis* (1961) 56 Cal.2d 93, 99 [13 Cal.Rptr. 801, 362 P.2d 713], disapproved on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631, 648-649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].)

Appellant contends that the prosecutor's question about appellant's explanation, if any, to the arresting officer might have been offered as a means of showing appellant's mental condition at the time of his arrest or for some other purpose; that the use of appellant's silence after arrest as evidence of guilt was not immediately apparent. Therefore, if in fact the argument was impermissible, the objection was not waived by failure to object to the question. The true source of prejudice was the inference drawn by the pros-

ecutor from appellant's silence, i.e., that his testimony was false because he failed to immediately disclose his defense to arresting officers.

The question itself was innocuous at best. It would not alert defense counsel to the danger of subsequent impermissible argument based on appellant's answer. Thus, a timely objection was made at the first opportunity, during the prosecution's argument, and the objection was improperly overruled by the trial court.[1] No waiver occurred. (*People* v. *Purvis, supra,* 56 Cal.2d 93, 99.)

### B. Postarrest Silence Sans Miranda Warnings.

*Miranda* v. *Arizona* (1966) 384 U.S. 436, 468, footnote 37 [16 L.Ed.2d 694, 720, 86 S.Ct. 1602, 10 A.L.R.3d 974], noted the prosecution may not use at trial the fact that an individual stood mute or claimed his privilege in the face of an accusation. In *Doyle* v. *Ohio, supra,* 426 U.S. 610, the Supreme Court held that the use for impeachment purposes of a defendant's silence at the time of arrest and after receipt of *Miranda* warnings violates due process. *Doyle* v. *Ohio* has been limited by the United States Supreme Court to situations at or after arrest where a silence or refusal to explain amounted to an invocation of a right to remain silent.

*People* v. *Galloway* (1979) 100 Cal.App.3d 551 [160 Cal.Rptr. 914], has been frequently cited for the rule that under *Doyle,* it is fundamentally unfair to allow an arrestee's silence following warnings of his constitutional right to silence to be used to impeach an explanation subsequently offered at trial. However, there is no indication that the defendant in *Galloway* was ever given *Miranda* warnings. In fact, this court specifically disagreed with respondent's contention that *Doyle* error only occurs when the prosecutor inquires about a defendant's failure to talk to law enforcement officers after he has been given his *Miranda* rights. (*Id.,* at p. 556.)

In *Jenkins* v. *Anderson* (1980) 447 U.S. 231 [65 Cal.Rptr. 86, 100 S.Ct. 2124], the Supreme Court rejected an attempt to extend the *Doyle* exclusionary rule to prearrest silence. The court allowed a testifying defendant claiming self-defense to be impeached with the fact that he never told his

---

[1]Appellant alternatively seeks to avoid the bar of *Green* by asserting that the failure to object to the prosecutor's question deprived him of effective assistance of counsel. In *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], the Supreme Court set out a two-step test for determining the adequacy of counsel: "[Defendant] must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, [he] must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." Appellant herein has failed to meet either of these requirements.

story to the police during the two weeks between the offense and his arrest. The court distinguished *Doyle* on the basis that where *Miranda* warnings had been given, the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. *Jenkins* was followed in *People* v. *Burton* (1981) 117 Cal.App.3d 382 [172 Cal.Rptr. 632, 19 A.L.R.4th 1243] (no claim of self-defense when talking to police before arrest; self-defense asserted at trial), and *People* v. *Free* (1982) 131 Cal.App.3d 155 [182 Cal.Rptr. 259] (defendant fled rather than informing police he acted in self-defense; self-defense asserted at trial).

California courts have prohibited prosecution comment on a defendant's postarrest silence in the face of police questioning, even though no *Miranda* warnings were given. *People* v. *Gaines* (1980) 103 Cal.App.3d 89, 95-96 [162 Cal.Rptr. 827], overruled on other grounds in *People* v. *Nelums* (1982) 31 Cal.3d 355, 360 [182 Cal.Rptr. 515, 644 P.2d 201], held that comment for impeachment purposes regarding postarrest silence was constitutionally impermissible. The record in *Gaines* did not indicate whether Gaines had at the time been given *Miranda* warnings. (*Id.*, at p. 91.) The First District Court of Appeal, quoting from *People* v. *Cockrell* (1965) 63 Cal.2d 659, 670 [47 Cal.Rptr. 788, 408 P.2d 116], said: " ' "[A]fter the arrest and during an official examination, while respondent is in custody, it is common knowledge that he has a right to say nothing. Only under peculiar circumstances can there seem to be any duty then to speak. Lacking such circumstances, to draw a derogatory inference from mere silence is to compel the respondent to testify; . . ." ' " (*People* v. *Gaines, supra,* 103 Cal.App.3d 89, 95.)

In a *per curiam* opinion, the United States Supreme Court decided that in the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, cross-examination of postarrest silence does not violate *federal* due process. The court also stated: "A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which post-arrest silence may be deemed to impeach a criminal defendant's own testimony." (*Fletcher* v. *Weir* (1982) 455 U.S. 603, 607 [71 L.Ed.2d 490, 494, 102 S.Ct. 1309, 1312].)

Without referring to *Gaines,* this court declared the following "California rule": "[P]ostarrest silence may not be commented upon if it follows a *Miranda* warning. The same rule may apply if there is no *Miranda* warning in order to foreclose inducement of police to dispense with a *Miranda* advisement where they suspect that the arrestee would refuse to talk anyway or where they know that he will, but manipulate the facts by asking no questions immediately after the arrest, in order to use the defendant's silence against him, later giving a *Miranda* warning in order to secure a

statement. Although this procedure leads to gamesmanship, it is approved by United States Supreme Court precedent. (*Fletcher* v. *Weir* (1982) 455 U.S. 603 [71 L.Ed.2d 490, 102 S.Ct. 1309].) Prearrest silence may be commented upon unless the court finds the silence was an invocation of Fifth Amendment rights. Prearrest silence in circumstances in which there is no inference of a reliance on the right to silence may be used to impeach by way of cross-examination." (*People* v. *Free, supra,* 131 Cal.App.3d 155, 165.)

*Doyle, supra,* 426 U.S. 610, concludes that "silence at the time of arrest may be inherently ambiguous even apart from the effect of *Miranda* warnings" (*id.,* at pp. 617-618, fn. 8 [49 L.Ed.2d at p. 97]), and that the error does not depend upon previous *Miranda* warnings, but "lies in the cross-examination on this question [of postarrest silence], thereby implying an inconsistency that the jury might construe as evidence of guilt." (*Id.,* at p. 619, fn. 10 [49 L.Ed.2d at p. 98].)

In *United States* v. *Hale* (1975) 422 U.S. 171 [45 L.Ed.2d 99, 95 S.Ct. 2133], the respondent was tried and convicted of robbery in a district court for the District of Columbia. During cross-examination at trial, the prosecutor asked the defendant why he had not given the police his alibi when he was questioned shortly after his arrest. The trial court instructed the jury to disregard the colloquy but refused to declare a mistrial. The United States Supreme Court held the defendant's silence during police interrogation lacked significant probative value and under the circumstances any reference to the silence carried with it an intolerably prejudicial impact. The court, exercising its supervisory authority over the lower federal courts, ordered a new trial. The ruling and discussion did not distinguish between the period of time prior to the giving of *Miranda* warnings and the subsequent silence. The Supreme Court analyzed the probative value of postarrest silence and stated: "In most circumstances silence is so ambiguous that it is of little probative force. For example, silence is commonly thought to lack probative value on the question of whether a person has expressed tacit agreement or disagreement with contemporaneous statements of others. See 4 Wigmore, § 107. Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation. Failure to contest an assertion, however, is considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question. . . . But the situation of an arrestee is very different, for he is under no duty to speak . . . ." (*Id.,* at p. 176 [45 L.Ed.2d at pp. 104-105].)

With respect to postarrest silence, the court found that a variety of factors may cause the defendant to remain silent (e.g., intimidation by situation,

fear, or unwillingness to incriminate another).[2] In light of these factors, it would not have been "natural" to offer an explanation. The court therefore concluded that postarrest silence lacked probative value. (*Id.*, at p. 177 [45 L.Ed.2d at p. 105].)[3]

The *Miranda* warnings and an arrestee's right to remain silent have been widely publicized. In many cases, the silence of an unwarned arrestee will be based on his personal knowledge of his *Miranda* rights. Therefore, the "implicit assurance" that his silence will not be used against him, which has been made known to the general public via the media and other methods of communication, is inherently present. The privilege against self-incrimination would indeed be "reduced to a hollow mockery" if exercising it results in self-incrimination just as much as not exercising it. *Doyle*'s constitutional "implicit assurances" should protect the defendant who fails to talk to the police after his arrest but prior to receiving *Miranda* warnings.

Appellant cites as persuasive authority *People* v. *Conyers* (1981) 52 N.Y.2d 454 [438 N.Y.S.2d 741, 420 N.E.2d 933] and *People* v. *Quintana* (Colo. 1983) 665 P.2d 605.

In *Conyers,* the prosecutor, over timely objection by defense counsel, questioned the defendant about his failure to explain the situation to the arresting officer immediately upon his arrest. Reference to defendant's postarrest silence was also made during the prosecutor's summation to the jury. The Court of Appeal of New York noted: "[T]he individual's silence in such circumstances may simply be attributable to his awareness that he is under no obligation to speak or to the natural caution that arises from his knowledge that anything he says might later be used against him at trial [citations omitted]. Alternatively, the individual may refrain from speaking because he believes that efforts to exonerate himself under the circumstances would be futile [citations omitted]. Finally, it is a lamentable but undeniable fact of modern society that some of our citizens harbor a mistrust for law enforcement authority which leads them to shun contact with the police even when the avoidance of contact is not in their own best interest [citation omitted]. Such individuals may refrain from speaking to law enforcement officials not because they are guilty of some crime, but rather because they are simply fearful of coming into contact with those whom they regard as antagonists. In short, although a defendant's failure to come forward with an exculpatory version of events prior to trial may reflect negatively upon

---

[2] The appellant herein maintained at trial that culpability lay with a man named "Killer" whom he refused to identify. This is consistent with a fear or unwillingness to incriminate another. (See *United States* v. *Hale, supra,* 422 U.S. at p. 177 [45 L.Ed.2d at p. 105].)

[3] Since the Supreme Court was exercising its supervisory powers over the federal courts, *Hale* may persuade, but does not control, the state courts.

the veracity of his trial testimony, his prior silence also may be attributable to a variety of innocent circumstances that are completely unrelated to the truth or falsity of his testimony. Accordingly, evidence of a defendant's pretrial silence must be regarded as having minimal probative significance and as having a correspondingly low potential for advancing the truth-finding process even when offered solely for purposes of impeachment." (*People* v. *Conyers, supra,* 420 N.E.2d 933, 935.)

The *Conyers* court concluded that the use of such evidence for impeachment purposes cannot be justified in the absence of unusual circumstances. (*Id.,* at pp. 935-936.) This judicially created rule of exclusion was premised upon the familiar standard " 'whether the prejudicial effect . . . outweighs the probative worth of the evidence' on the issue for which it is being admitted." (*Id.,* at p. 936.)

*Quintana* relied upon *Conyers.* The record in *Quintana* is silent on when, if at all, the defendant was given a *Miranda* admonishment. (*People* v. *Quintana, supra,* 665 P.2d 605, 607.) Over objection, the district attorney elicited testimony that the defendant, immediately after being arrested, made no statement whatever to the arresting officers regarding his defense of duress. Reference to the defendant's postarrest silence was also made in the prosecutor's summation to the jury. Relying upon *Conyers,* the Supreme Court of Colorado decided that due to the many possible explanations for the defendant's postarrest silence, that in the circumstances of that case evidence of his failure to make a statement to the arresting officers was so ambiguous and lacking in probative value as to be inadmissible as substantive evidence when offered to disprove the affirmative defense of duress. (*Id.,* at p. 611.)

The rationale of *Doyle* and *Hale,* bolstered by the reasoning in *Quintana* and *Conyers,* is persuasive. ▮▮ Thus, in the instant case we conclude that evidence of appellant's failure to make an exculpatory statement to the arresting officer was so ambiguous as to have little or no probative value and was greatly outweighed by its prejudicial effect. Subsequent reference to appellant's postarrest silence during closing argument was improper.

## C. *Prejudicial Error.*

▮▮ The traditional test for prejudice once prosecutorial misconduct has been established is whether, but for the misconduct, it is reasonably probable that a more favorable result to the defense would have occurred. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 212-214 [152 Cal.Rptr. 141, 589 P.2d 396].)

■ Appellant provides a defense on the basis that several other people were standing in front of his establishment on the morning in question. He refused to identify them because they were people involved in drug transactions. According to appellant, one of them, identified only as "Killer," threw down the vial and ran away as the deputies approached. Appellant picked up the vial only to dispose of it, but dropped it to avoid complications with law enforcement when Deputy Hackney pulled up and yelled at him.

Deputies Hackney and Orman testified that although it was common for several people to be standing out front of the Silver Dollar Bar and Grill in the morning hours, no one but the appellant was seen on that particular morning. The neighborhood, it seems, was strangely deserted. Deputy Orman only saw appellant in possession of the vial for five to ten seconds.

The only major dispute in the evidence, then, was the purpose for which appellant had possession of the vial prior to dropping it. The only evidence on the question of intent presented by the prosecution was the quantity and value of the PCP contained in the vial. The only direct evidence of appellant's intent was his testimony that he only sought to dispose of it. It was this testimony which the prosecutor decimated by his argument to the effect that appellant's testimony was unbelievable because, if true, he would have told it to the arresting officers.

On the contrary, appellant testified he did not wish to incriminate the other persons who had been there previously. This is a judicially recognized reason for remaining silent. (*United States* v. *Hale, supra,* 422 U.S. 171, 177 [45 L.Ed.2d 99, 105].) Furthermore, it is clear from the record that appellant had experienced direct and antagonistic contact with law enforcement on previous occasions and the jury was aware that he had suffered a prior felony conviction for burglary.

The evidence presented a close case on the question of intent. Absent the prosecutor's argument that appellant was not to be believed because of his *postarrest silence* it is reasonably probable that a more favorable result to the defense would have occurred. Thus, the error was prejudicial and the case must be reversed.

II. *Beagle* Error.

The California Supreme Court has held that the provisions of Proposition 8 on the June 1982 ballot apply only to proceedings arising out of offenses

committed on or after the effective date of the proposition. (*People* v. *Smith* (1983) 34 Cal.3d 251, 261-263 [193 Cal.Rptr. 692, 667 P.2d 149].) Appellant's offense occurred on April 7, 1982, and these proceedings are therefore governed by pre-Proposition 8 law regarding the admissibility of prior felony convictions for purposes of impeachment.

The general rule prior to the passage of Proposition 8 provided that felony convictions bearing on veracity are admissible. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1].) Remoteness or nearness in time of the felony conviction to the date of the offense for which defendant is on trial is one of the factors to be considered by the trial court deciding the admissibility of a prior felony conviction under *Beagle*.

■ The trial court in this case permitted reference to a second degree burglary conviction which occurred on June 19, 1975, seven years and three months prior to trial. Appellant asserts *Beagle* error on the basis that the prior conviction was too remote.

In *People* v. *Newton* (1980) 107 Cal.App.3d 568, 577 [166 Cal.Rptr. 60], it was held that a 10-year-old prior conviction was too remote, although the error was held to be harmless. Six-year-old prior convictions have been determined to be comparatively recent in this context. (*People* v. *Kemper* (1981) 125 Cal.App.3d 451, 454-455 [178 Cal.Rptr. 156]; *People* v. *Boothe* (1977) 65 Cal.App.3d 685, 688-689 [135 Cal.Rptr. 570].)

Here, the trial court properly exercised its discretion in this matter, determining that the appellant had not suffered a remote prior, "followed by a legally blameless life . . . ." (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453.) The prior was not closely related nor similar to the charge of possession of PCP for purposes of sale and in addition to the admitted prior conviction, appellant had a 1980 violation of Penal Code section 484, 1981 violations of Penal Code sections 242 and 240, and a 1979 violation of Penal Code section 245, subdivision (a).

III. SENTENCING ERROR.

Appellant contends this case must be remanded for resentencing as the trial court failed to state affirmative reasons in support of the imposition of a state prison sentence rather than probation. Since we have reversed appellant's conviction in part I of this opinion, the issue is moot. Suffice it to say that denial of probation is a sentencing choice for which reasons must be stated on the record. (*People* v. *Mobley* (1983) 139 Cal.App.3d 320, 324 [188 Cal.Rptr. 583].)

Reversed.

Hamlin, J., and Van Auken, J.,* concurred.

A petition for a rehearing was denied July 6, 1984, and respondent's petition for a hearing by the Supreme Court was denied October 4, 1984.

*Assigned by the Chairperson of the Judicial Council.