Filed 6/3/14  P. v. Martinez

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GABRIEL MARTINEZ,<br><br>    Defendant and Appellant. | H039686<br>(Santa Clara County<br>Super. Ct. No. C1246241,<br>C1348548) |

## I.  INTRODUCTION

Defendant Gabriel Martinez pleaded no contest in three separate cases to charges of making criminal threats to his wife's housemate (Pen. Code, § 422)[1], inflicting injury on his wife (§ 273.5), and stalking her (§ 646.9, subd. (a)).  Defendant filed written objections to two proposed probation conditions and filed a motion under section 17, subdivision (b) ("17(b) motion") to reduce to misdemeanors the convictions for making criminal threats and inflicting injury.  At sentencing, when the trial court indicated that more time would be needed to determine whether the 17(b) motion was authorized by the plea bargain, defendant withdrew the motion under protest to obtain immediate release from custody.  The trial court sustained his objection to one of the probation conditions and, pursuant to the negotiated disposition, placed defendant on three years' probation in each of the two felony cases, and denied probation in the misdemeanor case.  In the

---

[1] Unspecified section references are to the Penal Code.

misdemeanor case, the court sentenced defendant to 229 days in jail, the same amount of custody credit he had in that case. In the felony cases the court ordered 245 days concurrent jail time as a probation condition and awarded 245 days of custody credit. Other probation conditions included a search condition – "You are to submit your person, place of residence, vehicle, and any property under your control to search at any time without a warrant by any peace officer."

On appeal, defendant renews his claim that the search condition is unreasonable. He also asserts error in the trial court's refusal to hear his 17(b) motion. The Attorney General contends that defendant withdrew that motion and therefore cannot complain. We will reverse the judgment and remand for the trial court to rule on defendant's 17(b) motion.

## II.  TRIAL COURT PROCEEDINGS

Because the cases were resolved before any preliminary examination, the probation report is our primary source of information about the crimes.

On July 18, 2012, defendant stalked his wife. (§ 646.9, subd. (a).) This led to a misdemeanor charge in Santa Clara County Superior Court Case No. C1240586.

On December 6, 2012, defendant's wife was staying in San Jose with Jesus Montiel, her ex-boyfriend. According to Montiel, defendant came to his residence and got upset when Montiel would not let him see his wife. Defendant threatened to kill him and come back and " 'finish the job.' " Defendant had previously come after Montiel with a knife. Defendant argued with Montiel and his wife until the police arrived. Officers heard defendant yell out to Montiel, " 'When I get out I am coming back to kill you!' " Defendant told the police he had come to San Jose to see his wife and daughter and that he refused to attend court hearings. He wanted the police to take his daughter away from his wife because officers did that to him in Turlock. This led to a felony criminal threat charge (§ 422) in Santa Clara County Superior Court Case No. C1246241.

2

On December 20, 2012, while defendant was out on bail for the criminal threat, he brought his daughter to Montiel's residence, began arguing with his wife about her living arrangement, pulled out a small can, and sprayed her face with what was apparently pepper spray. A doctor at a regional center observed that she had a first degree chemical burn. This led to a felony charge of inflicting corporal injury on his wife (§ 273.5) while out on bail (§ 12022.1) in Santa Clara County Superior Court Case No. C1348458 (sometimes "the injury case").

## A. CHANGE OF PLEA

At a hearing on March 19, 2013, the court asked the prosecutor "to state the terms of the agreement[]." The prosecutor stated, "Defendant is going to plead as charged to all the charges on the three dockets … . [¶] The agreement is that the defendant will get eight months county jail that can be concurrent in all three matters. [¶] As to the two felony matters, … defendant will be placed on formal probation with domestic violence terms. [¶] And as for the misdemeanor docket … , probation can be denied." The prosecutor also stipulated defendant could receive "maximum credits on all three cases … ." Defense counsel and defendant agreed this explanation reflected their understanding of the agreement.

The court proceeded to review a preprinted and handwritten "Advisement of Rights, Waiver, and Plea Form Felony" (form CR-6020) with defendant, establishing that, with counsel's assistance, he had reviewed and understood the form before signing it and initialing a number of boxes. The court obtained defendant's oral waivers of individual rights before defendant pleaded no contest to violations of sections 422, "a felony," 273.5, subdivision (a), "a felony," and 646.9, subdivision (a), "a misdemeanor." He also admitted he was out on bail when he injured his spouse. The court established that defense counsel had signed the waiver form and concurred in the pleas and that the prosecutor had also reviewed and signed it. The prosecutor agreed orally that "it

3

accurately set forth the agreement." Noting counsel had stipulated on the form to a factual basis for the convictions, the court also signed the form.

The eight-page form has a number of components. Item 9 on page 2 is entitled "plea agreement." (Capitalization omitted from printing and handwriting throughout.) Defendant initialed boxes stating in print, "Probation for up to five years, under conditions to be set by the Court, including a county jail term of" followed by handwriting stating "8 months (c/c) on felonies, c/c time[.] Probation denied on misdemeanor. CTS to be maximized, and at least the max. on any of the cases[.] Eligible for half time on the current sentence." Items 18 through 20 on page 4 are entitled "fines and fees." Printed on 18 are nine different fines, fees, and assessments with four of them struck out by hand. Item 20 recites that the amounts of the fines for restitution and the general fund are not part of the plea agreement. Defendant initialed items 26 and 27 on page 5, entitled "strike offenses." Preprinted on item 26 is, "I understand that count(s) _____ each qualifies as a 'strike' under the Three Strikes Law." Handwritten in the blank is "PC 422 in C1246241." Item 27 is a preprinted declaration of defendant's understanding that as a result of a guilty or no contest plea to a strike offense, "the penalty for any future felony conviction will be increased … depending on the number of strikes I have … ." Defendant signed a preprinted statement on page 7 that he had "initialed each of the items that applies to my case" to show he understood and assented to it. On the final page, the prosecutor signed a printed acknowledgment that the form "correctly sets forth the terms of defendant's plea … ." The preprinted statement does not require assent to the same proposition from defendant's attorney.

Sentencing was initially scheduled for May 10, and was continued to May 17, and again to May 24, 2013.

The probation report recommended three concurrent years of formal probation for each felony offense (making a criminal threat and inflicting corporal injury on a spouse) with overlapping conditions plus two additional conditions in the injury case. One

4

condition common to both cases was "[t]he defendant shall submit his/her person, place of residence, vehicle and any property under his/her control to search at any time without a warrant by any Peace Officer." Another was "[t]he defendant shall not possess any item that under the law would be considered a deadly or dangerous weapon(s) during the period of Probation."

On May 16, 2013, defendant filed written objections to the above-quoted conditions, arguing they were not reasonably related to his crimes or future criminality and noting that he was prohibited by law from possessing firearms and ammunition.

On May 18, 2013, defendant filed a motion under section 17, subdivision (b), asking that the convictions for making criminal threats and inflicting corporal injury be reduced to misdemeanors at the time of granting probation, or at least "the Section 422 charge ... ."

## B. SENTENCING HEARING

At the hearing on May 24, 2013, the trial court stated it had considered the probation report, defendant's motions, and "a copy of a response as to one of the probation conditions from the People as well."[2] The court announced its intention "to follow the negotiated agreement for the eight-month county jail sentence concurrent across all three cases, including that the misdemeanor would be in probation-denied status."

### 1. ARGUMENT REGARDING SECTION 17(B) MOTION

The People objected to the 17(b) motion, arguing that the negotiated plea was for the defendant to plead as charged; part of the plea bargain was that the section 422 violation was a strike offense, which was inconsistent with reducing the conviction to a

---

[2] No such response is in the record on appeal.

5

misdemeanor. The People urged that if the court were to consider the motion, the case should be returned to "pre-prelim status," so that "defendant can withdraw his plea."

Defense counsel asserted that the plea bargain included no discussion about whether the agreement precluded or contemplated a 17(b) motion, and, under those circumstances, a 17(b) motion was "always appropriate." Defendant argued that the "primary motivation for seeking reduction on the 422 is to avoid the strike consequences, which would last forever," so the court could leave the section 273.5 conviction as a felony to impose felony probation.

The court indicated that it was customary in reaching a bargain for the parties to negotiate whether defendant could bring a 17 (b) motion. The court stated: "I would agree, [defense counsel], that a [s]ection 17 motion can be brought at any time; however, the question then arises as to whether or not that negates the deal that was agreed upon. [¶] And it's my impression based on the three files I have, the sentence that was agreed upon, and the way the plea form reads that it was not contemplated that this offer meant – would include, for example, Count 1 in the docket ending 241, which is a felony, that that matter would be a misdemeanor, in fact, because it's specifically spelled out on the plea form."

Defense counsel confirmed that defendant was interested in being sentenced and released immediately, and was not interested in withdrawing his plea.

The court continued: "where that leaves us is, procedurally, I think there are [a] couple of different ways we could proceed. One is Mr. Martinez withdraws his request under [s]ection 17 so he can receive the negotiated sentence. That's one way to proceed. I am unclear if there's any other avenue open to me." The parties discussed whether the court could deny the motion as untimely, but the court felt it was timely. "It's more a matter of I don't think that – I think that it violates the terms of the negotiated plea. But that's – I don't know that that's up to me to decide."

Defense counsel commented, "well, I guess the bottom line is if you felt that hearing a [s]ection 17 motion would violate the plea and you would set the plea aside, if the only way we could avoid going down that route would be to withdraw the 17 motion, we would do so here and now on the record but under protest that it was essentially legally coerced, because it is, in fact, consistent with the plea. And then that could be sorted out as appropriate later."

The prosecutor reiterated that a 17(b) motion "was not part of the negotiated disposition" and if defendant wanted to proceed with the motion, the prosecution would request a continuance "for research and possible motions on the issue." The People argued that defendant's 17(b) motion was essentially a request to withdraw from the plea agreement, and, having accepted the plea, the court could not grant the motion.

The court stated: "It would be my intention today to follow the negotiated agreement. And so, [defense counsel,] I believe the position that leaves us in is that Mr. Martinez has an option at this point to have me proceed consistent with the negotiated terms or to wish to proceed, and in doing that then to withdraw his motion under [s]ection 17, or to choose to ask to proceed on the [s]ection 17 at which point I would not proceed with sentencing. We would put it over to determine whether or not it is procedurally appropriate or whether the People have some basis on which to set aside their part of the agreement. [¶] And I do understand your position that Mr. Martinez's position is that if he does withdraw the motion it would be because he feels at this point legally coerced to do that. And I'll leave that to be determined in a forum where that's appropriately determined."

Defense counsel responded, "Your Honor, we will go ahead – I mean, if this is the choice as I'm hearing your Honor - and withdraw our [s]ection 17 motion with – under protest in – to the extent that we think it's legally viable and consistent with the plea bargain. You apparently are feeling otherwise, and so we will yield since we want to be

7

under legal protest since we do want the sentencing to proceed today with the indicated sentence."

The court accepted "the request to withdraw that motion recognizing that there's no bar to that motion being brought at other times in the future."

## 2. ARGUMENT REGARDING PROBATION CONDITIONS

The court announced that several proposed probation conditions would not be imposed in the criminal threat case and would be imposed only in the injury case. The probation officer noted the need for a firearms restriction under sections 29800 and 30305.

After the above discussion of the 17(b) motion, the court stated its intent to follow the negotiated agreement and asked about the People's position if the court were to limit weapon possession to pepper spray. The prosecutor asserted that a broader weapons condition was appropriate due to the use of pepper spray, due to a report that "the defendant has previously brandished a knife. There's also in the misdemeanor reports that defendant might have access to guns." The People observed that the case did not simply involve domestic violence, as the criminal threat was made against another victim. The court declined to impose the deadly or dangerous weapon condition in the criminal threat case and ordered "no pepper spray" in the injury case. "With respect to the search condition, in light of the protective orders which require no possession or access to weapons, as well as the 'no weapons' provision, but in particular because of the protective order, I am finding that the search condition in each case is reasonably related to preventing future criminality under *Lent*, and that's an appropriate probation condition."

In both cases, the court imposed the condition that, "You are not to own, knowingly possess, or have within your custody or control any firearm or ammunition for the rest of your life pursuant to Penal Code Sections 29800 and 30305." In the injury

8

case, the court stated, "You are not to possess any item – actually, you are not [to] possess any pepper spray during the period of your probation."

Defendant filed a notice of appeal in case C1246241 the day of the probation order, May 24, 2013. Defendant filed a notice of appeal in case C1348548 on October 15, 2013 after this court granted him leave to file an untimely notice.

### III. THE SEARCH CONDITION IS REASONABLE

On appeal defendant renews his challenge to the search condition – "You are to submit your person, place of residence, vehicle, and any property under your control to search at any time without a warrant by any peace officer."

We review probation conditions for abuse of discretion and will uphold the trial court's broad discretion so long as a challenged condition relates generally to criminal conduct or future criminality or specifically to the probationer's crime. (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*); *People v. Olguin* (2008) 45 Cal.4th 375, 379-380 (*Olguin*).) The reasonableness of a probation condition may be challenged on appeal only if the probationer has questioned it in the trial court. (*People v. Welch* (1993) 5 Cal.4th 228, 237 (*Welch*); see *In re Sheena K.* (2007) 40 Cal.4th 875, 882.).)

On appeal, as in the trial court, defendant has relied on a series of outdated cases as establishing that the search condition is unreasonable in this case. (*People v. Keller* (1978) 76 Cal.App.3d 827 (*Keller*), disapproved on another ground by *Welch, supra*, 5 Cal.4th 228, 233-237; *In re Martinez* (1978) 86 Cal.App.3d 577; *People v. Mayers* (1980) 110 Cal.App.3d 809 (*Mayers*); *People v. Burton* (1981) 117 Cal.App.3d 382 (*Burton*).)

*In re Martinez* explained: "In *People v. Keller*, 76 Cal.App.3d 827, the Court of Appeal for the Fourth District, placed a 'gloss' on the three-pronged *Lent* test by adding an overall requirement of reasonableness in relation to the seriousness of the offense for which defendant was convicted. [¶] There the defendant was convicted of stealing a 49-cent ballpoint pen. On the assumption that defendant's shoplifting propensities were rooted in a narcotic problem, the court imposed the 'search' condition in granting him

9

probation. The Court of Appeal, while basing its decision essentially on a failure of the condition to meet the *Lent* test, suggested that the condition was in any event unreasonable in a case of such minor importance. We are of the opinion that the *Keller* court's approach was sound and we approve." (*Martinez, supra*, 86 Cal.App.3d at p. 583.) *Burton* similarly relied on *Keller* and *Martinez* in concluding "nothing in appellant's past history or the circumstances of the present offense [(assault with a lead pipe on a coworker)] indicate a propensity on appellant's part that he would resort to the use of concealed weapons in the future. Under these circumstances it cannot be said that the condition of a warrantless search reasonably relates to the prevention of appellant's future criminality." (*Burton, supra*, 117 Cal.App.3d at p. 391.)

In characterizing this line of authority as outdated, we agree with *People v. Balestra* (1999) 76 Cal.App.4th 57 (*Balestra*), in which *Keller* was repudiated by the authoring court. *Balestra* characterized *Keller* as going "far beyond the *Lent* test to list a total of seven factors we would require to uphold a probation condition." (*Balestra, supra*, at p. 66.) "It is clear that *Keller* is inconsistent with the Fourth Amendment jurisprudence since the date of that decision. As our Supreme Court has recently (and repeatedly) made clear, a warrantless search condition is intended to ensure that the subject thereof is obeying the fundamental condition of all grants of probation, that is, the usual requirement (as here) that a probationer 'obey all laws.' Thus, warrantless search conditions serve a valid rehabilitative purpose, and because such a search condition is necessarily justified by its rehabilitative purpose, it is of no moment whether the underlying offense is reasonably related to theft, narcotics, or firearms: 'The threat of a suspicionless search is fully consistent with the deterrent purposes of the search condition. "'The purpose of an unexpected, unprovoked search of defendant is to ascertain whether [the probationer] is complying with the terms of [probation]; to determine not only whether he disobeys the law, but also whether he obeys the law. *Information obtained under such circumstances would afford a valuable measure of the*

10

*effectiveness of the supervision given the defendant ... .'"* [Citations.]' ... . (*People v. Reyes* (1998) 19 Cal.4th 743, 752, italics added.)" (*Balestra, supra,* at p. 67, fn. omitted.) We agree with *Balestra* that *Lent* and not *Keller* states the critera under which a probation search condition should be regarded as reasonable.

As the Attorney General notes, *Balestra* was cited with approval by *Olguin, supra,* 45 Cal.4th 375, which upheld a condition requiring a probationer to notify the probation officer of the presence of pets in his residence. The court noted that probation involves supervision by a probation officer. "For example, probation conditions authorizing searches 'aid in deterring further offenses ... and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.' (*People v. Robles* (2000) 23 Cal.4th 789, 795.) A condition of probation that enables a probation officer to supervise his or her charges effectively is, therefore, 'reasonably related to future criminality.' (See, e.g., *People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240 (*Kwizera* ) [affirming probation condition requiring the defendant to '"follow such course of conduct as the probation officer prescribes"' as reasonable and necessary to enable the probation department to supervise compliance with specific conditions of probation]; *Balestra, supra,* 76 Cal.App.4th at pp. 65-67 [upholding warrantless search condition that served valid rehabilitative purpose of helping probation officer ensure that probationer obeys all laws].)" (*Olguin, supra,* at pp. 380-381.)

*Olguin* noted that probation conditions limiting constitutional rights should be closely tailored to the purpose of the condition. (*Olguin, supra,* at p. 384.) "On the other hand, we have observed that probation is a privilege and not a right, and that adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights – as, for example, when they agree to warrantless search conditions." (*Ibid.*; citing *Balestra* among other cases in support.) We recognize, as defendant points

11

out, that this discussion of search conditions in *Olguin* was dictum, as the defendant in that case failed to demonstrate that the challenged condition impaired any constitutional right. (*Id.* at pp 384-387.)

Defendant criticizes *Balestra* for failing to acknowledge that probation conditions limiting constitutional rights are subject to higher scrutiny. Defendant fails to recognize that probationers should not expect to enjoy the same freedoms as other citizens. *United States v. Knights* (2001) 534 U.S. 112 (*Knights*) stated: "Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled."' [Citations.] Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." (*Id.* at p. 119.)

The search condition imposed in both cases here is justified to ensure defendant's compliance with other conditions which prohibit possessing pepper spray, firearms, and ammunition. The search condition is reasonably and directly related to his crimes (including spraying his wife in the face) and to future criminality. We find neither an abuse of discretion nor an unwarranted restriction of defendant's constitutional rights.

## IV. THE 17(B) MOTION

Defendant contends that the trial court erred in ruling that his 17(b) motion was contrary to the plea bargain. The Attorney General responds that the court made no such ruling: "The court's ruling ... was that sentencing would be continued to litigate the dispute if defendant wanted a ruling on the motion to reduce (and whether the People could move to withdraw from the plea if the criminal threat conviction were reduced as defendant wanted), or, alternatively, defendant could withdraw the motion without prejudice to its renewal at a future time if he wanted sentencing under the plea agreement that day." Presented with those alternatives, defendant elected to withdraw his motion. The Attorney General also asserts that it was inconsistent with defendant's negotiated plea to have his criminal threat conviction reduced to a misdemeanor. Defendant agrees

12

that his argument targets the criminal threat conviction and not the spousal injury conviction.

## A. EFFECT OF THE THREE STRIKES STATUTES

Violations of both sections 422 and 273.5 are wobblers, that is, crimes that may be punished alternatively as a felony or a misdemeanor. (See *People v. Culbert* (2013) 218 Cal.App.4th 184, 193 [§ 422]; *People v. Jackson* (2000) 77 Cal.App.4th 574, 576 [§ 273.5].) Section 17, subdivision (b), allows the trial court to determine the nature of such an offense at the time of sentencing or later, namely "on application of the defendant or probation officer" after the trial court has granted probation "without imposition of sentence." (§ 17, subd. (b)(3).)

Conferring discretion on the sentencing court to classify a crime serves at least two purposes. It affords the sentencing court greater flexibility in tailoring the punishment to fit the crime and the offender, recognizing that the same crime can deserve different types of punishment depending on the seriousness of the circumstances of its commission. (See *People v. Smith* (1968) 259 Cal.App.2d 868, 873.)

A separate purpose is served by allowing the trial court to reduce the offense after probation has been granted. The prospect of earning a reduction may motivate a defendant to comply successfully with probation conditions. (*People v. Feyrer* (2010) 48 Cal.4th 426, 439-440, (*Feyrer*) superseded by statute on another ground as stated in *People v. Park* (2013) 56 Cal.4th 782, 789, fn. 4 (*Park*).) Section 17, subdivision (b)(3) is consistent with a purpose of the probation statutes, which "are intended to afford the defendant an opportunity to demonstrate his or her rehabilitation in order to obtain early termination of probation, reclassification of the offense, or dismissal of the action, and – in certain cases – all such forms of leniency." (*Feyrer*, *supra*, at p. 440.) "[I]n conferring upon the court the power to declare an offense to be a misdemeanor after it has suspended imposition of judgment or sentence, the Legislature evidently intended to enable the court to reward a convicted defendant who demonstrates by his conduct that he is

rehabilitated." (*Meyer v. Superior Court* (1966) 247 Cal.App.2d 133, 140.) Section 17, subdivision (b)(3) was added in 1963. (*Park, supra*, 56 Cal.4th at p. 793.)

In contrast, the focus of the Three Strikes statutes enacted in 1994 is punishment rather than rehabilitation. The intent of the Legislature in enacting section 667, subdivisions (b) through (i), was described in subdivision (b) of the statute. Voters had the same intent in enacting a virtually identical statute, section 1170.12, later the same year. "[T]he stated purpose of both the legislative and initiative versions is to 'ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.'" (*People v. Hazelton* (1996) 14 Cal.4th 101, 108, quoting the ballot pamphlet.)

The California Supreme Court has determined the Three Strikes statutes do not restrict a sentencing court's authority under section 17, subdivision (b) to reduce a wobbler to a misdemeanor for a defendant who has one or more strikes. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 973 (*Alvarez*) [possession of methamphetamine].) However, the Three Strikes statutes also treat as strikes some prior convictions deemed misdemeanors under section 17, subdivision (b). Whether a prior conviction amounts to a serious or violent felony strike is determined "upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor." (§§ 667, subd. (d)(1); 1170.12, subd. (b)(1).) If a crime is not declared a misdemeanor at the initial grant of probation, it remains a strike under the Three Strikes statutes even if a court later declares it a misdemeanor under section 17, subdivision (b). (*Feyrer, supra*, 48 Cal.4th 426, 442, fn. 8; see *Park, supra*, 56 Cal.4th 782, 794; *People v. Superior Court (Perez)* (1995) 38 Cal.App.4th 347, 363.)

Defendant asked the trial court to determine at the time of granting probation that both offenses, the criminal threat (§ 422) and the spousal injury (§ 273.5), were misdemeanors. Defendant expressed special concern about the section 422 conviction,

14

acknowledging his "primary motivation for seeking reduction on the 422 is to avoid the strike consequences, which would last forever ... ." Defendant correctly assumed that if the trial court did not declare his section 422 conviction a misdemeanor at the time of granting probation, it would have strike consequences for him in the event of a later felony conviction.

## B. TRIAL COURT RULING

The parties disagree about whether the trial court reached the merits of defendant's 17(b) motion. Defendant asserts that the trial court ruled the motion was inconsistent with the plea bargain. Based on the discussion among the court and counsel about defendant's 17(b) motion, we agree with the Attorney General that the trial court did not actually rule that the motion contravened the plea bargain, but offered a tentative ruling to that effect. The court's stated impression was that the agreement did not contemplate the criminal threat becoming a misdemeanor: "I think that it violates the terms of the negotiated plea. But that's – I don't know that that's up to me to decide." The only way defendant could receive his negotiated sentence that day was to withdraw his motion. If defendant wanted a ruling on his motion, "[w]e would put it over to determine whether or not it is procedurally appropriate or whether the People have some basis on which to set aside their part of the agreement."

## C. EFFECT OF THE PLEA AGREEMENT

Plea agreements are interpreted like other contracts with the goal of giving effect to the parties' mutual intention. "'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.'" (*People v. Shelton* (2006) 37 Cal.4th 759, 767; *Feyrer, supra*, 48 Cal.4th at p. 437.) The parties to the negotiations are a criminal defendant and the executive branch of

government, represented by the prosecutor. (Cf. *People v. Orin* (1975) 13 Cal.3d 937, 943.) The resulting agreement is not effective until the court approves it. (*Id.* at pp. 942-943; §§ 1192.4, 1192.5.)

"'[T]he "interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence."'" [Citations.] 'In contrast, "[i]f the parol evidence is in conflict, requiring the resolution of credibility issues, we would be guided by the substantial evidence test. [Citation.]" [Citation.] However, extrinsic evidence is not admissible to ascribe a meaning to an agreement to which it is not reasonably susceptible. [Citation.]' [Citation.]" (*People v. Paredes* (2008) 160 Cal.App.4th 496, 507.) What is controlling is the objective intent of the parties. A party's subjective, undisclosed intent is irrelevant to interpreting an contract. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956.)

In *Feyrer, supra*, 48 Cal.4th 426, the California Supreme Court considered whether a plea bargain limited a trial court's ability under section 17, subdivision (b) to declare a strike to be a misdemeanor based on the defendant's successful performance on probation. The court observed that allowing a reduction of the offense at the completion of probation serves a rehabilitative purpose. "A grant of probation is *intended* to afford the defendant an opportunity to demonstrate over the prescribed probationary term that his or her conduct has reformed to the degree that punishment for the offense may be mitigated or waived. Thus, under favorable circumstances, when punishment has not been imposed, the offense (with certain exceptions) may be reclassified or nullified." (*Id.* at p. 439.) To serve this policy, the court concluded, "The fundamental feature of probation is that good conduct on the part of the probationer may invite mitigation of punishment and (in the case of a wobbler) reclassification of the offense. If there is to be any curtailment of those routinely available options, such a restriction should be made an express term of the plea agreement." (*Id.* at p. 440.) *Feyrer* applied "the rule that every

16

term of a plea bargain should be stated on the record." (*Id.* at p. 438.) The *Feyrer* court was especially reluctant to infer a term "purporting to restrict the sentencing authority of the court." (*Ibid.*)[3]

The remaining question in *Feyrer* was whether the plea agreement in that case did have such an express restriction. The defendant had agreed to plead no contest to felony assault involving force likely to produce great bodily injury and to admit personal infliction of great bodily injury in exchange for felony probation with six months in jail. The defendant also acknowledged at the plea hearing that the conviction qualified as a strike. (*Id.* at p. 432.) "[I]t is evident that defendant's plea of no contest to an *enhanced felony* was a material term of the plea agreement." (*Id.* at p. 436.) "It ... is clear the parties intended to ensure that if defendant committed any *future* offense, his conviction for the current offense could be treated as a 'strike' under the Three Strikes law." (*Id.* at p. 437.) On the other hand, the court found "no clear indication, ... that the parties ... intended to provide that the felony could not be reduced to a misdemeanor under any circumstances, regardless of defendant's conduct during the period of probation. The terms of the plea agreement do not state that this is the case. Nor do the terms of that agreement abrogate the provisions of section 17, subdivision (b)(3), or other statutes applicable during (or upon the conclusion of) a successful term of probation." (*Feyrer*, *supra*, at p. 437.)

---

[3] *Feyrer* embodies the broader principle that, after a plea agreement, a court retains all sentencing authority not expressly restricted by or necessarily inconsistent with the terms of the agreement. This principle is also illustrated in precedent recognizing that the sentencing court retains discretion to determine the amount of the restitution fine if the plea agreement omits any restriction of the amount. (*People v. Dickerson* (2004) 122 Cal.App.4th 1374, 1384; *People v. Sorenson* (2005) 125 Cal.App.4th 612, 619; *People v. Crandell* (2007) 40 Cal.4th 1301, 1309; *People v. Villalobos* (2012) 54 Cal.4th 177, 183.) Indeed, the plea change form in this case expressly recognized the trial court's retained authority to establish the amounts of restitution fund and general fund fines.

17

Both sides claim to find support in *Feyrer* on appeal. We recognize, as the Attorney General emphasizes, that *Feyrer* was concerned with the trial court's authority at a later stage of the proceedings, namely after probation terminated. The *Feyrer* court was not required to determine whether the agreement precluded a 17(b) motion at the initial grant of probation. Even if the agreement in *Feyrer* had contained such a restriction, it would not compel the conclusion that the agreement before us contains a similar restriction. There are potentially significant factual differences between the cases.

*Feyrer* discusses the effect of an early determination of a defendant's 17(b) motion. The court explained that conviction of a wobbler will have consequences as a strike despite "[t]he suspension of imposition of judgment or sentence" when probation is granted (§§ 667, subd (d)(1)(A); 1170.12, subd. (b)(1)(A)) unless the crime is deemed a misdemeanor "upon the initial sentencing" (§§ 667, subd (d)(1) 1170.12, subd. (b)(1). (*Feyrer*, *supra*, 48 Cal.4th 426, 442, fn. 8.) *Feyrer* also states that a plea agreement to restrict the trial court's authority under section 17, subdivision (b) "should be stated on the record." (*Id.* at p. 438.) From the agreement in that case, it was clear that the defendant's conviction would have strike consequences, but it was not clear "that the parties also intended to provide that the felony could not be reduced to a misdemeanor under any circumstances … ." (*Id.* at p. 437.)

The Three Strikes statutes make it imperative to determine at the time of initial sentencing the character of those few offenses that are alternatively misdemeanors or strike felonies. Postponing a ruling on a defendant's 17(b) motion until after probation is granted eliminates the court's ability to relieve the defendant of strike consequences in an appropriate case.

In this case, the parties disagreed about the terms and intent of the plea agreement at the next hearing following its announcement. The plea change form and oral recital of the plea agreement must be read together to ascertain the terms of the agreement. Because reasonable minds may differ about what parts of the completed form reflect the

18

actual plea agreement, the trial court should be the first to determine whether a material term of the plea agreement was that the section 422 conviction would be a strike, such that it would not be subject to a 17(b) motion at the time of initial sentencing. If the court concludes that it retains authority to classify the section 422 conviction under section 17, subdivision (b), the court should proceed to make that determination while it is still meaningful, before granting defendant probation pursuant to the plea agreement. Our determination that the trial court must consider whether defendant can bring a 17(b) motion should not be understood as any indication about the merits of the motion.

### D. FORFEITURE

The Attorney General contends that defendant has forfeited review of his section 17(b) motion, because he withdrew the motion. Ordinarily, this court will not review a tentative ruling when no definite ruling follows. (People v. Burnett (2003) 110 Cal.App.4th 868, 880.) However, we reach the procedural issue under these circumstances due to the necessity of a trial court ruling on the scope and terms of the plea agreement before the initial sentencing, in light of the enduring effect of initial felony versus misdemeanor treatment on the strike character of defendant's section 422 conviction.

## V. DISPOSITION

The judgment is reversed. The matter is remanded for the trial court to determine whether the plea agreement allows consideration of defendant's 17(b) motion at the time of initial sentencing and, if so, to rule on that motion. If the trial court determines that consideration of the 17(b) motion is precluded, or considers and denies the motion,

the judgment shall be reinstated. If the court grants the motion, the court shall enter a new judgment consistent with that ruling.

_____
Grover, J.

**WE CONCUR:**

_____
Bamattre-Manoukian, Acting P.J.

_____
Márquez, J.