Filed 9/19/16  P. v. Aguilar CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ART AGUILAR, JR.,<br><br>    Defendant and Appellant. | H041956<br>(Santa Clara County<br>Super. Ct. No. 214150) |

Defendant Art Aguilar, Jr., was in custody and being transferred to the county main jail when a jail-made knife and five "kites"[1] with information about a prison gang fell from his pants.  After the trial court declared a mistrial, Aguilar pleaded no contest to possessing a weapon in jail (Pen. Code, § 4502, subd. (a))[2] and admitted a gang enhancement (§ 186.22, subd. (b)(1)(A)).  The trial court sentenced Aguilar to a total term of five years in state prison, suspended execution of the sentence, and placed him on four years of probation.

Aguilar challenges two of his probation conditions on grounds of reasonableness and overbreadth.  These require Aguilar:  (1) to provide all passwords and submit to warrantless searches of any electronic devices, including but not limited to cell phones, computers, or notepads, within his custody or control; and (2) to provide all passwords and submit to warrantless searches of any social media sites.  Aguilar also challenges a

---

[1] A "kite" is a type of inmate correspondence.

[2] Unspecified statutory references are to the Penal Code.

third probation condition which prohibits him from owning, using, or possessing any item that he knows is capable of being used in a dangerous or deadly manner with the intent to use it in "any" manner.

We conclude that the probation conditions authorizing searches of Aguilar's electronic devices and social media sites satisfy reasonableness requirements but are overbroad and must be modified. We find the third condition prohibiting possession of an item capable of being used in a dangerous or deadly manner is overbroad as pronounced in the oral record and must be modified to conform to the written record.

## I. BACKGROUND

The weapon offense was committed while Aguilar was serving a sentence in an unrelated matter, certain facts of which are nevertheless relevant here.[3] In that matter, Aguilar received an eight-month county jail sentence and four years of probation for child endangerment (§ 273a, subd. (a)) and for several misdemeanor convictions.[4] He was housed at a correctional facility when deputies searched his cell and confiscated one gallon of "pruno" (a jail-made alcoholic drink) and 14 kites, some of which had directions to fill out a personal report to the "house," and Aguilar's responses stating that he was from the City of Morgan Hill and his "hood" was Varrio Morgan Lomas, a Norteño street gang. The next day, Aguilar was rehoused at the county main jail. Jail deputies had Aguilar remove his shirt and were talking to him about his tattoos when a four-inch knife with a metal tip and five kites fell from his pants.

---

[3] The facts are taken from Aguilar's probation report and sentencing memorandum in the present case.

[4] Aguilar's misdemeanor convictions were drug possession (Health & Saf. Code, §§ 11350, subd. (a), 11377, subd. (a)), possession of metal knuckles (§ 21810), and possession of a billy (§ 22210).

Aguilar waived his *Miranda*[5] rights and explained that while being housed at the correctional facility, his uncle introduced him as a "homeboy" to Norteño gang members. He did not have prior gang ties. An inmate known as "Silent" gave Aguilar the weapon and instructed him to hold it for one week, which he did out of fear of retribution if he declined. When asked about the kites, Aguilar explained there were questions he had to answer and information regarding the rules and regulations governing the "Northern" prison gang. Aguilar denied being a gang member.

Aguilar was charged by grand jury indictment with possession of a weapon while confined in a penal institution (§ 4502, subd. (a)), for the benefit of, at the direction of, and in association with, a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by members of that gang (§ 186.22, subd. (b)(1)(A)). The indictment also alleged that at the time of the offense charged, Aguilar was on probation for a felony and thereby ineligible for probation or suspension of a sentence (§ 1203, subd. (k)). Aguilar pleaded not guilty and denied the gang enhancement. A jury trial ended in a mistrial after the jury was unable to reach a verdict. The parties then entered a negotiated disposition in which Aguilar pleaded to the charge of possessing a weapon in jail and admitted the gang enhancement, in exchange for dismissal of the probation prohibition under section 1203, subdivision (k), making him eligible for probation at the time of sentencing. The parties did not agree on a specific sentence.

The judge at sentencing, who had presided over the jury trial, indicated his agreement with the probation department's assessment of Aguilar's gang involvement, which was "functioning in the jail" and did not extend to involvement in gang activities outside of custody. The judge voiced doubts about Aguilar's credibility at trial but noted

---

[5] *Miranda v. Arizona* (1966) 384 U.S. 436.

3

Aguilar's motivation and incentive to get his "life back together and get connected back with" his child, who was the subject of an ongoing dependency proceeding.[6]

In light of these considerations, the trial court sentenced Aguilar on January 16, 2015, to the midterm of three years on the sole count of possession of a weapon in jail and two years on the gang enhancement, for a total prison term of five years. The court suspended execution of the sentence and placed Aguilar on four years of formal probation, giving him "an opportunity to . . . get out there to start your reunification process."

For his probation conditions, defense counsel acknowledged that "gang conditions are appropriate" given the gang enhancement, but objected on constitutional and reasonableness grounds to conditions concerning passwords to electronic devices or social media sites, arguing "[t]here was no indication that Mr. Aguilar had any Facebook accounts or anything on the computer that was gang related. So I don't believe there will be a basis to impose those two conditions." The People argued the conditions were reasonable given that "we don't really know what kind of gangster he's going to be when he gets out on the street, if he's going to be a gangster at all. We know based on his own statement, he got involved in the gang when he entered the jail. He became so involved, he started transporting weapons for them. I don't think it's a real reach to think upon his release he may end up posting messages or committing crimes or communicating with other gang members through social media since that's something they do certainly use."

Over the defense's objection, the trial court imposed the gang conditions requiring Aguilar to provide his passwords for, and authorizing searches of, his electronic devices and social media. Probation condition No. 24 states: "The defendant shall provide all

_____

[6] Aguilar is the sole parent of the child, whose mother died suddenly from a heart complication. Aguilar's "life fell to pieces" and he began abusing drugs, leading to his earlier convictions.

passwords to any electronic devices, including but not limited to, cellular telephones, computers or notepads within his custody or control, and submit said devices at any time without a warrant by any peace officer." Probation condition No. 25 states: "[D]efendant shall provide all passwords to any social media sites, including but not limited, to Facebook, Instagram, and Mocospace, and shall submit to sites to search by any time without a warrant by any peace officers." The court also imposed probation condition No. 27, as stated in relevant part: "Probationer is not to own, use, or possess any item that he knows to be capable of being used in a dangerous or deadly manner, with the intent to use it in any manner, . . . ."

## II.  DISCUSSION

### A.  PROBATION CONDITIONS REQUIRING PASSWORDS AND AUTHORIZING SEARCHES OF DEFENDANT'S ELECTRONIC DEVICES AND SOCIAL MEDIA

Aguilar argues that conditions Nos. 24 and 25, which we will refer to as the electronic search conditions, are unreasonable because they bear no relation to his offense or future criminality. (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).) He also challenges both conditions as unconstitutionally overbroad. The People respond that the electronic search conditions are reasonably related under *Lent* to the supervision and deterrence of future criminal behavior, particularly Aguilar's gang affiliation and drug use, and are sufficiently narrow for constitutional purposes.

#### 1.  Reasonableness

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety . . . ." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) This broad discretion, however, "is not without limits." (*Id.* at p. 1121.) A condition of probation is generally "invalid [if] it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) "This test is conjunctive—all three

5

prongs must be satisfied before a reviewing court will invalidate a probation term."
(*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) We review the imposition of probation conditions for abuse of discretion. (*Ibid*.)

There is no dispute that two prongs of the *Lent* test are satisfied here. First, the challenged conditions have no relationship to the crime for which Aguilar was convicted. As he points out, possession of a jail-made weapon in jail for the benefit of a criminal gang is a "low tech" crime not related to the use of electronic devices or social media. Second, the conditions relate to conduct that is not criminal. The United States Supreme Court has deemed cell phones "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." (*Riley v. California* (2014) __ U.S. __, ___ [134 S.Ct. 2473, 2484] [2014 U.S. LEXIS 4497] (*Riley*).) Given that "a significant majority of American adults now own such phones" (*ibid*.)—and the same probably is true for computers, notepads, and social media accounts, we find the electronic search conditions relate to conduct that is not by itself criminal. (See also *In re J.B.* (2015) 242 Cal.App.4th 749, 755 (*J.B.*) ["it is beyond dispute that the use of electronic devices and of social media is not itself criminal"].)

At issue is the third prong of the *Lent* test, whether the condition requires or forbids conduct that is not reasonably related to future criminality. Aguilar argues that nothing in the record or his personal history connects his crime to the use of electronic devices or social media. The People respond that under two California Supreme Court decisions, a search term that facilitates the supervision of a probationer relates to future criminality within the meaning of *Lent*, even if the criminal behavior to be deterred does not relate to the offense of conviction. (*Olguin*, *supra*, 45 Cal.4th at p. 378; *People v. Ramos* (2004) 34 Cal.4th 494, 506 (*Ramos*).)

The probation condition in *Olguin* required the probationer to notify his probation officer of any pets present at his place of residence. (*Olguin*, *supra*, 45 Cal.4th at p. 378.) Convicted of driving under the influence, the defendant contended in pertinent part that

6

the challenged condition was not reasonably related to his future criminality. Our high court disagreed, noting that "[p]robation officers are charged with supervising probationers' compliance with the specific terms of their probation to ensure the safety of the public and the rehabilitation of probationers. Pets residing with probationers have the potential to distract, impede, and endanger probation officers in the exercise of their supervisory duties. By mandating that probation officers be kept informed of the presence of such pets, this notification condition facilitates the effective supervision of probationers and, as such, is reasonably related to deterring future criminality." (*Ibid*.)

In *Ramos*, the challenged condition required the defendant to submit to a warrantless search of his person, property, automobile, and any object under his control. Ruling on a motion to suppress, the court found the probation search term was valid given the " 'de minimis' " intrusion and " 'greatly reduced' " expectation of privacy " 'when the subject of the search is on notice his activities are being routinely and closely monitored.' " (*Ramos*, *supra*, 34 Cal.4th at p. 506.) The court explained that " 'the purpose of the search condition is to deter the commission of crimes and to protect the public, and the effectiveness of the deterrent is enhanced by the potential for random searches.' " (*Ibid*.)

Aguilar argues that neither *Olguin* nor *Ramos* contemplated the level of intrusion posed by the search of a person's computer, cell phone, or social media, which following the Supreme Court's decision in *Riley* cannot be considered de minimis. We find this argument conflates reasonableness under *Lent*, as articulated in *Olguin*, with the degree to which a probation condition burdens a constitutional right. As stated in a recent case involving a similar probation condition imposed on a juvenile, "It may well be that a probation condition requiring a minor to forward all electronic communications to the probation officer or to wear a body camera would be unreasonable under *Lent*, . . . but it would be so because of the burden it imposed on the minor—not because it invaded the minor's privacy (a constitutional concern better addressed by the overbreadth doctrine),

7

and certainly not because it lacked a connection to preventing future criminality." (*In re P.O.* (2016) 246 Cal.App.4th 288, 296 (*P.O.*).)

We turn to the argument that Aguilar's association with gang members while in jail is insufficient to support a finding of reasonableness under *Lent*, because there is no evidence that he might continue to associate with gang members upon his release, nor that he would now begin using social media to communicate with gang members or engage in criminal conduct. Two cases that Aguilar relies on for support are *People v. Burton* (1981) 117 Cal.App.3d 382 and *In re Martinez* (1978) 86 Cal.App.3d 577. Both predated *Olguin* by decades, however, and their reasoning is not compatible with current precedential authority.[7] We decline to apply that reasoning here.

More recent cases have differed in their treatment of probation conditions similar to the electronic search conditions here. Aguilar cites *In re Erica R.* (2015) 240 Cal.App.4th 907 (*Erica R.*) and *J.B.*, *supra*, 242 Cal.App.4th 749. These cases declined to read *Olguin* as sanctioning imposition of electronic search conditions without evidence the probationer is likely to use his or her electronic devices or social media for proscribed

_____

[7] *People v. Burton*, *supra*, 117 Cal.App.3d at page 391, held a warrantless search condition invalid following the defendant's conviction for assault with a deadly weapon, because "nothing in [the defendant's] past history or the circumstances of the present offense indicate a propensity . . . that he would resort to the use of concealed weapons in the future." Under those circumstances, the court reasoned, "it cannot be said that the condition of a warrantless search reasonably relates to the prevention of" future criminality. (*Ibid.*) *In re Martinez*, *supra*, 86 Cal.App.3d at page 583, drew the same conclusion, explaining "[t]here must be some rational factual basis for projecting the possibility that defendant may commit a particular type of crime in the future, in order for such projection to serve as a basis for a particular condition of probation." Both cases followed the reasoning of another case, *People v. Keller* (1978) 76 Cal.App.3d 827 disapproved on another ground in *People v. Welch* (1993) 5 Cal.4th 228, 237, which the issuing court later repudiated, stating that its decision in *People v. Keller* went "far beyond the *Lent* test" (*People v. Balestra* (1999) 76 Cal.App.4th 57, 66) and was "inconsistent with subsequent case authority from both the United States and California Supreme Courts." (*Id.* at p. 68.) *Balestra* was cited with approval by *Olguin*, *supra*, 45 Cal.4th at page 381.

activities. Because there was no evidence in the record connecting the minor's conviction for drug possession with her use of electronic devices, the court in *Erica R*., rejected the juvenile court's justification that " 'many juveniles, many minors, who are involved in drugs tend to post information about themselves and drug usage.' " (*Erica R*., *supra*, 240 Cal.App.4th at p. 913.) The court explained that " '[n]ot every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can be considered reasonable.' " (*Ibid*.) Similarly in *J.B*., the court rejected the juvenile court's imposition of electronic search conditions on a minor convicted of petty theft who also had admitted to using marijuana: "[T]here is no showing of any connection between the minor's use of electronic devices and his past or potential future criminal activity. As in *Erica R*., ' "there is no reason to believe the current restriction will serve the rehabilitative function of precluding [J.B.] from any future criminal acts." ' " (*J.B*., *supra*, at p. 756.)

The California Supreme Court has granted review in a third case that followed the reasoning in *J.B*. and *Erica R*. (*In re Mark C*. (2016) 244 Cal.App.4th 520, 535, rev. granted Apr. 13, 2015, S232849.) Several other cases involving electronic search conditions and juvenile defendants are also under review. At least three of these found the electronic search conditions were not unreasonable under *Lent* but were unconstitutionally overbroad (*In re Alejandro R*. (2015) 243 Cal.App.4th 556, rev. granted Mar. 9, 2016, S232240; *In re Patrick F*. (2015) 242 Cal.App.4th 104, rev. granted Feb. 17, 2016, S231428; *In re Ricardo P*. (2015) 241 Cal.App.4th 676, rev. granted Feb. 17, 2016, S230923), and another found the electronic search condition was neither unreasonable under *Lent* nor overbroad in light of extensive challenges the minor faced in complying with probation and avoiding re-offense. (*In re A.S*. (2016) 245 Cal.App.4th 758, rev. granted May 25, 2016, S233932.)

Until further guidance issues as a result of these cases, we find that *J.B*. and *Erica R*. are distinguishable on the facts given that neither involved the commission of an

9

offense on behalf of and at the direction of a criminal street gang. They also stand in contrast with *P.O.*, *supra*, 246 Cal.App.4th 288, in which the appellate court upheld a comparable condition under *Lent* despite no direct evidence that the juvenile defendant was inclined to use electronic devices or social media. The minor in *P.O.* admitted to a misdemeanor count of public intoxication. The juvenile court imposed an electronic search condition, reasoning that " 'we have people who present themselves on the Internet using drugs or . . . in possession of paraphernalia, and that's the only way we can properly supervise these conditions.' " (*Id.* at p. 293.) The court affirmed the juvenile court's finding that the condition was reasonably related to future criminality because it "enables peace officers to review P.O.'s electronic activity for indications that P.O. has drugs or is otherwise engaged in activity in violation of his probation." (*Id.* at p. 295.)

Further along these lines is this court's decision in *People v. Ebertowski* (2014) 228 Cal.App.4th 1170 (*Ebertowski*), which involved probation conditions identical to the electronic search conditions at issue here.[8] The defendant in *Ebertowski* was a gang member convicted of threatening and resisting a police officer for the benefit of his gang. The record also showed that he promoted his gang on social media. (*Id.* at p. 1175.) Because the defendant's "association with his gang gave him the bravado to threaten and resist armed police officers," this court found that allowing officers "to closely monitor his gang associations and activities" was the only way to allow him to remain in the community on probation without posing an extreme risk to public safety. (*Id.* at p. 1177.) The electronic search conditions therefore were valid under *Lent* based on the "plainly gang related" nature of the defendant's crimes and, relatedly, his future criminality. (*Ibid.*)

---

[8] It appears from the record that the electronic search conditions discussed in *Ebertowski* are included among a standardized set of gang-related probation conditions in Santa Clara County.

10

Aguilar seeks to distinguish *Ebertowski* in terms of degree, because there the defendant was an avid gang member who promoted his gang online and communicated with gang members through social media, whereas Aguilar claims no history of prior gang involvement, or of promoting gang activity or communicating with members electronically, and whose focus upon release is on completing reunification in dependency court. We agree the record in this case does not reflect the same impassioned involvement in or commitment to the gang, as compared to *Ebertowski*. (*Ebertowski*, *supra*, 228 Cal.App.4th at p. 1173 [defendant repeatedly identified himself as a gang member and warned the officer he was " ' "[f]ucking with the wrong gangster" ' "].) The extent of Aguilar's gang involvement is expressed in the trial court's finding that "while Mr. Aguilar's out of custody, I don't think that he's involved with gang activities, but my belief and my sense was that he was functioning [as a gang member] in the jail." The probation report similarly noted there was no indication of prior gang related activity and that Aguilar did not appear to be a " 'hard-core' " gang member but rather chose to " 'function' " while incarcerated.

Whether "functioning" or committed, we find the reasoning of *Ebertowski* applies equally here based on the gang-related nature of the offense and risk of continued, criminal gang associations during the probation period. Aguilar admitted carrying a weapon in jail at the direction of gang members. This aspect of his offense raises a realistic possibility of ongoing gang-related associations and communications. In imposing the electronic search conditions, the trial court recognized this possibility and indicated that it viewed the conditions in relation to "probation being able to perform their duties," thus suggesting that without the challenged conditions, probation would be unable to supervise effectively Aguilar's compliance and to monitor any reoccurrence or continuation of his gang associations.

Reasonableness under the third prong of the *Lent* test exists when a probation condition "enables a probation officer to supervise his or her charges effectively . . ."

(*Olguin*, *supra*, 45 Cal.4th at pp. 380-381), even if the condition "has no relationship to the crime of which a defendant was convicted." (*Id*. at p. 380.) *Ramos* emphasized the deterrence purpose of a probation search condition as it relates to preventing future criminal conduct, including " 'the potential for random searches.' " (*Ramos*, *supra*, 34 Cal.4th at p. 506.) In *P.O.*, the offense was public intoxication, and the court found that enabling supervision of the minor's online activity was reasonably related to monitoring her sobriety. (*P.O.*, *supra*, 246 Cal.App.4th at p. 295.) In *Ebertowski*, the defendant's offense was gang related and this court found that monitoring the defendant's gang associations and activity was reasonably related to his future criminality risk. (*Ebertowski*, *supra*, 228 Cal.App.4th at p. 1177.) So too here, the electronic search conditions' effectiveness as it relates to future criminality is the potential to monitor Aguilar's activity and communications through the use of his electronic devices and social media. (See also *People v. Lopez* (1998) 66 Cal.App.4th 615, 626 [gang condition could be imposed on a defendant with a gang affiliation as "an essential element of any probationary effort at rehabilitation because it would insulate him from a source of temptation to continue" criminal pursuits]; *In re George F*. (2016) 248 Cal.App.4th 734, 741 ["wisdom in *Olguin*, . . . is that effective supervision of a probationer deters, and is therefore related to, future criminality"].)

Based on Aguilar's gang-related offense and gang affiliation in jail, it was sensible for the court to conclude that imposing a gang-related probation condition requiring him to turn over his electronic devices and social media passwords was reasonably related to future criminality. Allowing the probation officer to access this information will facilitate Aguilar's supervision and can deter future criminality by ensuring that he disassociates from the gang. Accordingly, the trial court did not abuse its discretion in imposing the electronic search conditions.

12

### 2. Overbreadth

Having concluded the challenged conditions are valid under *Lent*, *supra*, 15 Cal.3d 481, we consider whether they are unconstitutionally overbroad.

"A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights . . . ." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) We review de novo the constitutional challenge to the probation conditions. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

Courts recognize the privacy concerns posed by warrantless searches of personal electronic devices, including computers and cell phones. (See, e.g., *People v. Appleton* (2016) 245 Cal.App.4th 717, 724 (*Appleton*) [individuals hold constitutionally protected expectation of privacy in the contents of their computers]; *People v. Michael E.* (2014) 230 Cal.App.4th 261, 277 [computer hard drive searches implicate "at least the same privacy concerns" as cell phone searches]; *U.S. v. Heckenkamp* (9th Cir. 2007) 482 F.3d 1142, 1146 [reasonable expectation of privacy in personal computer is not extinguished simply by attaching computer to the network].)

The Supreme Court has expounded on these concerns in the context of warrantless searches of cell phones: "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.' " (*Riley*, *supra*, __ U.S. at pp. __ [134 S.Ct. at pp. 2494-2495].) *Riley* identified several "consequences for privacy" that arise from the massive storage capacity of these "minicomputers" and their pervasiveness, including the revelatory quality of "distinct types of information" available all in one place and the depth of information that may be conveyed. (*Id*. at p. __ [134 S.Ct. at p. 2489].) "[I]t is

13

no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives— from the mundane to the intimate." (*Id*. at p. __ [134 S.Ct. at p. 2490].)

Aguilar relies on *Riley* to argue that requiring him to turn over passwords for his electronic devices and social media accounts implicates privacy concerns that go beyond the general search conditions of his probation. The People respond that in *Ebertowski*, *supra*, 228 Cal.App.4th 1170, this court rejected a similar argument and determined the "[d]efendant's constitutional privacy rights are not improperly abridged by the password conditions any more than they are by the search condition." (*Id*. at p. 1176.) We note, however, that *Ebertowski* did not address the Supreme Court's decision in *Riley*. Also, the defendant in *Ebertowski* did not suggest how the password conditions could be more tailored to their purpose (*id*. at p. 1175), whereas Aguilar identifies categories of information that are arguably irrelevant to his rehabilitation as a probationer and could be excluded from the electronic search conditions.[9] Aguilar also argues that equivalent search access could be met by requiring him to log onto his devices at the direction of probation, thus eliminating the need for him to provide his passwords. The People acknowledge that several cases since *Ebertowski* have found similar probation conditions to be overbroad[10] and suggest that in light of these decisions, the court "could limit official access to appellant's media of communication that are reasonably likely to reveal

---

[9] These categories include banking and business information (including customer and financial information for the tattoo parlor that Aguilar owns), medical and insurance information, games, music libraries, electronic books, magazines, and newspapers, and information related to the dependency proceeding, including communications with his court-appointed attorney and social workers.

[10] The three cases the People cite are among those now under review by our high court. (See *In re Alejandro R*., *supra*, S232240; *In re Patrick F*., *supra*, S231428; *In re Ricardo P*., *supra*, S230923.)

14

whether appellant is involved in proscribed activity, such as text messages, voicemail messages, photographs, e-mail accounts, and social media accounts."

These considerations lead us to depart from this part of the holding in *Ebertowski*. Indeed, since our decision in that case and while the issue is pending before the California Supreme Court (*In re Alejandro R*., *supra*, S232240; *In re Patrick F*., *supra*, S231428; *In re Ricardo P*., *supra*, S230923; *In re Mark C*., *supra*, S232849; *In re A.S*., *supra*, S233932), several recent appellate decisions have found similar probation search conditions to be overbroad. (*In re Malik J*. (2015) 240 Cal.App.4th 896, 903 (*Malik J*.); *Appleton*, *supra*, 245 Cal.App.4th 717; *P.O*., *supra*, 246 Cal.App.4th 288.)

In *Malik J*., the court found a probation condition that required the minor to turn over passwords to electronic devices and social media accounts "significantly encroache[d]" on the minor's and "potentially third parties' constitutional rights of privacy and free speech." (*Malik J*., *supra*, 240 Cal.App.4th at p. 902.) The court modified the condition to omit the requirement that the minor divulge his social media passwords and to restrict searches only to electronic devices found in the minor's custody and control and disabled from any network connection. (*Id*. at pp. 902, 906.) In *Appleton*, this court struck a probation condition that subjected the defendant's computers and other electronic devices " 'to forensic analysis search for material prohibited by law' " (*Appleton*, *supra*, 245 Cal.App.4th at p. 721) because the condition "would allow for searches of vast amounts of personal information unrelated to [the] defendant's criminal conduct or his potential for future criminality." (*Id*. at p. 727.) We remanded the matter for the trial court to consider imposing a more narrowly tailored formulation. (*Id*. at p. 728.) In *P.O*., the court modified the condition to limit searches of the minor's "cell phone data and electronic accounts to media of communication reasonably likely to reveal whether he is boasting about drug use or otherwise involved with drugs." (*P.O*., *supra*, 246 Cal.App.4th at p. 298.) The court further restricted the minor's disclosure of passwords to those accounts " 'necessary to access the information

15

specified. Such media of communication include text messages, voicemail messages, photographs, e-mail accounts, and social media accounts.' " (*Id.* at p. 300.)

We agree with the reasoning of these decisions in reference to *Riley*, *supra*, __ U.S. __ [134 S.Ct. 2473] and their general conclusion that the challenged conditions could be more narrowly tailored. (But see *In re George F.*, *supra*, 248 Cal.App.4th at p. 741 [upholding extensive supervision of minor sex offender's use of electronic social media and online material, including requirement that minor disclose passwords, noting however that "the court may impose broader probation conditions on juveniles than it may adults . . . ."].) As *Riley* makes clear, "the scope of a digital search is extremely wide." (*Appleton*, *supra*, 245 Cal.App.4th at p. 725.) "The current top-selling smart phone has a standard capacity of 16 gigabytes . . . . Sixteen gigabytes translates to millions of pages of text, thousands of pictures, or hundreds of videos. [Citations.] . . . . Even the most basic phones that sell for less than $20 might hold photographs, picture messages, text messages, Internet browsing history, a calendar, a thousand-entry phone book, and so on." (*Riley*, *supra*, at p. __ [134 S.Ct. at p. 2489].) The list expands further when, as here, access is not limited to the data stored on the device but includes information posted to or visible by logging onto an Internet-connected computer or onto a user's social media sites.[11] (See *Malik J.*, *supra*, 240 Cal.App.4th at p. 903 [remotely stored information "may also implicate the privacy interests of third parties who are not otherwise subject to search or court supervision"].)

Here, the electronic search conditions contain no limits on the information that may be searched. In light of *Riley*'s recognition of the breadth of personal information stored in and accessible via a person's cell phone, we find "the closeness of the fit"

[11] The *Riley* court discussed this complicating feature of modern cell phone data storage in the context of a search incident to arrest. (See *Riley*, *supra*, __ U.S. at p. __ [134 S.Ct. at p. 2491] [explaining "cloud computing" and the remote storage of cell phone data].)

16

between the purpose of the electronics search conditions and the imposition on Aguilar's constitutional rights (*In re E.O.*, *supra*, 188 Cal.App.4th at p. 1153; *Sheena K.*, *supra*, 40 Cal.4th at p. 890) to be substantially challenged.  We note in particular *Riley*'s observation that "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house:  A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form . . . ."  (*Riley*, *supra*, __ U.S. at p. __ [134 S.Ct. at p. 2491].)

Of course, by accepting probation, Aguilar agreed to " 'greatly reduced' " expectations of privacy and was put " 'on notice his activities are being routinely and closely monitored.' "  (*Ramos*, *supra*, 34 Cal.4th at p. 506.)  Also, "perfection" in fashioning probation conditions "is impossible, and . . . practical necessity will justify some infringement."  (*In re E.O.*, *supra*, 188 Cal.App.4th at p. 1153.)  On the other hand, as the cases make clear, "[a] narrow condition that achieves rehabilitation should be used in place of broad conditions that prevent otherwise lawful conduct and necessary activities."  (*People v. Perez* (2009) 176 Cal.App.4th 380, 384.)  With these principles in mind, we conclude that a closer fit could be struck between the legitimate purpose of supervising Aguilar's gang affiliation, compliance with his probation terms, and rehabilitation, and the burden imposed by the indefinite scope of the search terms.

The parties propose competing modifications to the electronic search conditions.  The People suggest limiting search authorization to those "media of communication that are reasonably likely to reveal" any involvement in proscribed activity, including "text messages, voicemail messages, photographs, e-mail accounts, and social media accounts" (see, e.g., *P.O.*, *supra*, 246 Cal.App.4th at p. 298), while Aguilar suggests limiting any search to items "contained in his computer, cell phone or other device that relate to monitoring gang activity" (see, e.g., *Malik J.*, *supra*, 240 Cal.App.4th at p. 906).  He also seeks to exclude information related to his tattoo parlor business, as well as

17

communications with his attorney, reports by social services, and other documents related to the dependency proceeding, and argues that he should be required to log onto his computer, cell phone, or other devices at the direction of probation, rather than provide his passwords.

We find that both proposals would tend to exclude certain categories of information that Aguilar has identified, such as banking and financial transactions, including related to his business, medical and insurance information, and games, books, and other literature stored digitally on his devices. We also find that communications and records related to the dependency proceeding for his child are not relevant to further his effective supervision and should be excluded. Since the electronic search conditions are not limited to mobile electronic devices, however, we find that to require his presence in order to log on to the computer or other electronic device would unreasonably interfere with probation's authorization to search "at any time without a warrant by any peace officer" as stated in both electronic search conditions.

Consistent with these findings, we hold that probation conditions Nos. 24 and 25 must be modified to limit authorization of warrantless searches of Aguilar's electronic devices, including computers, cell phones, and notepads, to media of communication reasonably likely to reveal any involvement in proscribed gang-related activity, including text and voicemail messages, photographs, e-mail accounts, and social media accounts, and excluding communications or electronic records related to dependency proceedings, confidential attorney-client, or counselor-client communications. Aguilar must disclose to peace officers any passwords necessary to gain access to those accounts reasonably likely to contain information authorized for search. (See, e.g., *P.O.*, *supra*, 246 Cal.App.4th at p. 300.)

18

### B. PROBATION CONDITION PROHIBITING POSSESSION OF ANY ITEM THAT COULD BE USED IN A DANGEROUS OR DEADLY MANNER

Aguilar argues that probation condition No. 27, relating to his possession of any item that could be used in a dangerous or deadly manner, is unconstitutionally vague and overbroad. The condition, as pronounced by the court, states in its entirety: "Probationer is not to own, use, or possess any item that he knows to be capable of being used in a dangerous or deadly manner, with the intent to use it in any manner, and that the probationer not be present in any place where another person unlawfully possesses such an item and the probationer knows that the person intends to use this item in a dangerous or deadly manner." In a written attachment to the minute order placing Aguilar on probation, the "dangerous or deadly manner" condition is stated in relevant part as: "The probationer not own, use or possess any item that he/she knows to be capable of being used in a dangerous or deadly manner, with the intent to use it in such manner, . . . ." The recommended condition as stated in the probation report matches that in the minute order.

We agree that condition No. 27, as stated, must be modified in order to eliminate the potential for overbreadth in applying the condition. As Aguilar points out, the phrase "with the intent to use it in any manner," implicates owning, using, or possessing even common items on the mere basis that they *could* be used in a dangerous or deadly manner, even when the intent is to use the item in an *ordinary* manner. Items so described could include daily necessities such as cars and bikes, medications, household tools and chemicals, cooking utensils, gardening supplies, shaving supplies, exercise equipment, and so on. "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) To the extent this part of the probation condition can be read to impinge on Aguilar's fundamental property right to own or possess such items, without furthering a legitimate rehabilitative or public safety purpose, we conclude it is

overbroad. (Cf. *Olguin*, *supra*, 45 Cal.4th at pp. 384-385 [rejecting overbreadth challenge to pet condition, because merely notifying probation of the presence of pets does not implicate property or associational rights]; see also *People v. Rodriguez* (2013) 222 Cal.App.4th 578, 586 [proscription against possessing intoxicants that "may include common items such as adhesives, bath salts, mouthwash, and over-the-counter medicines" must be modified to avoid overbreadth and vagueness].)

Condition No. 27 is also ambiguous because of the inconsistency between the oral pronouncement and the minute order. The People suggest that condition No. 27 may have been misstated by the trial court, which likely intended to impose the condition in the minute order and probation report. "If an irreconcilable conflict exists between the transcripts of the court reporter and the court clerk, the modern rule is not automatic deference to the reporter's transcript, but rather adoption of the transcript due more credence under all the surrounding circumstances." (*People v. Rodriguez*, *supra*, 222 Cal.App.4th at p. 586; *People v. Smith* (1983) 33 Cal.3d 596, 599; see also *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1345-1346.)

Having found the condition stated on the record is susceptible to overbreadth and ambiguity, we conclude that the version attached to the minute order is controlling. The trial court's stated probation condition should be modified to conform to that phrasing. We observe that replacing "in any manner" with "in such manner" renders the trial court's admonishment internally consistent: "Probationer is not to own, use, or possess any item that he knows to be capable of being used in a dangerous or deadly manner, *with the intent to use it in **such** manner*, and that the probationer not be present in any place where another person unlawfully possesses such an item and the probationer knows that the person *intends to use this item **in a dangerous or deadly** manner*." (Bold emphasis added.) In addition, that probation condition is checked on the minute order, suggesting the trial court intended to use it. Aguilar agrees that modifying the condition in this manner "bring[s] it into compliance with constitutional requirements."

20

## III. DISPOSITION

Probation condition No. 24 is modified to read: "The defendant shall provide all passwords to any electronic devices, including but not limited to, cellular telephones, computers, or notepads within his custody or control, and submit said devices to search at any time without a warrant by any peace officer. A search pursuant to this condition is limited to media of communication reasonably likely to reveal involvement in proscribed gang-related activity, including text and voicemail messages, photographs, e-mail accounts, and social media accounts, and excluding any communications or electronic records related to dependency proceedings, confidential attorney-client or counselor-client communications."

Probation condition No. 25 is modified to read: "The defendant shall provide all passwords to any social media sites, including but not limited, to Facebook, Instagram, and Mocospace, and shall submit the sites to search at any time without a warrant by any peace officer. A search pursuant to this condition is limited to material posted to or received via social media that is reasonably likely to reveal involvement in proscribed gang-related activity, including messages, photographs, and e-mail, and excluding any communications or electronic records related to dependency proceedings, confidential attorney-client or counselor-client communications."

Probation condition No. 27 is modified to read: "Probationer is not to own, use, or possess any item that he knows to be capable of being used in a dangerous or deadly manner, with the intent to use it in such manner, and the probationer is not to be present in any place where another person unlawfully possesses such an item and the probationer knows that the person intends to use this item in a dangerous or deadly manner."

As modified, the judgment is affirmed.

21

_____
                             Premo, J.

WE CONCUR:

_____
         Rushing, P.J.

_____
         Grover, J.